[Civil No. 3298. Filed December 12, 1932.]

[16 Pac. (2d) 967.]

HARRY ROE, Appellant, v. ROOSEVELT WATER CONSERVATION DISTRICT, a Municipal Corporation, G. C. SPILSBURY, C. H. McKELLIPS, C. V. STEWART, M. J. DOUGHERTY, BERT LEWIS, GEORGE H. WILBUR, JOHN ANDERSEN, H. F. BACKER and C. J. WOOD, as Directors of Roosevelt Water Conservation District, and JOHN D. CALHOUN, as Treasurer of Maricopa County, Arizona, and *Ex-officio* Treasurer of Roosevelt Water Conservation District, Appellees.

Mr. M. L. Ollerton, for Appellant.

Messrs. Moeur & Moeur, Mr. Dudley W. Windes and Mr. Roy L. Herndon, for Appellees.

ROSS, J.—The object of this suit is to test the legality of the action of the district's officers in accepting tax anticipation warrants from the purchasers

thereof, or their assigns, in payment of their district taxes.

The plaintiff is the owner and holder of one of 2,200 $1,000 bonds of the district upon which the interest is delinquent for the two fiscal years of 1931 and 1932. He claims that the practice pursued by the officers of the district in accepting tax anticipation warrants, issued and sold for the purpose of operation and maintenance, for district taxes levied and assessed for specific purposes, disables the district to pay matured interest coupons, and violates the law under which his bond was emitted, and seeks to enjoin the issuance of such warrants and also their acceptance in the payment of district taxes. The plaintiff's bond was authorized by the district in 1924, ard bears the date of December 1st, 1924. Its validity is not questioned. The lower court sustained a general demurrer to the complaint, and, plaintiff electing to stand thereon, judgment was entered against him. He has appealed.

The question is one of construction of the provisions of the irrigation district law. It is quite fully and well briefed by both sides.

The corporation defendant is an irrigation district organized under chapter 149, Laws of 1921, and amendments thereof, and carried forward into the Revised Code of 1928 as article 2 of chapter 81, sections 3324 et seq. The bonds, of which plaintiff's is one, were issued and sold for the purpose of installing the district's irrigation plant, consisting of canals, ditches, water and water rights, pumping facilities, power, etc., for some forty thousand acres of land. The management and control of the district's affairs and business, including its finances, subject to the provisions of law, are conferred upon its board of directors, elected by the qualified land owners of the district. (Section 3341.) It is made the duty of the board of directors on or before July 1st of each year

to make up a budget for the next fiscal year, including therein maturing bonds and interest, maintenance, operating and current expenses, with an additional amount to meet deficiencies in said items incurred in any previous year, fully itemizing such amounts for each specified fund into which the money of the district is divided by the district's treasurer, and to certify a copy thereof to the county board of supervisors of the county in which the district lands are located. (Section 3356.) A tax must be assessed and levied annually upon the real property of the district to meet bonds and interest. (Section 3354.) The tax is upon an acreage and not an *ad valorem* basis and the rate per acre is determined by the board of supervisors by adding to the gross amount of the budget certified to it by the district's board of directors fifteen per cent. thereof and computing on such total the tax on each acre in the district. The assessment and levy are made at the same time as the levy for state and county taxes and upon the regular state and county tax-roll and collected at the same time. (Sections 3358, 3359 and 3360.) The county treasurer is *ex-officio* treasurer of each irrigation district in his county and is required to receive, collect and receipt for all district moneys, and when for district taxes on the same receipt given for taxes for county purposes. (Section 3363.)

Section 3368 contains directions to the district's treasurer as to how he shall keep his books, and requires him to show therein the sources and purpose of every dollar collected or received by him and to apportion it among the several funds set up in the budget as follows:

"Every district treasurer by computations based upon certified estimates as returned to the board of supervisors, shall divide the money received from taxation on the lands of the district or from other sources, into district funds corresponding with the

purposes therein specified or for which they were paid. Moneys received on account of interest on the bonded indebtedness of a district shall be kept in an interest fund or account; moneys received on account of principal, on account of bonded indebtedness of district shall be kept in a bond account or fund; moneys received on account of release and discharge of lands in the district from the lien of the bonded indebtedness of the district shall be kept in a call or repayment fund or account; moneys received on account of maintenance, operation and current expenses for the district shall be kept in a maintenance, operation and a current expense account or fund; moneys received on account of the levy for outstanding or deficiency warrants shall be kept in a deficiency fund or account; and of any levy made for payment on completion of the irrigation works of the district shall be kept in a completion fund or account; and likewise if a levy shall be made or money received from any other source or for any other purpose, said money shall be kept in a separate fund or the account so designated as to identify the purpose for which said money was levied or received.''

Section 3357 places restrictions upon the use of the district's tax money in this language:

''All money raised by taxation on the estimated assessment and levy for purposes under this article, shall be applied to the objects for which it is levied and can be used for no other purposes, except that if there shall be a surplus in any fund at any time, there no longer being a demand for money in said fund, the board of directors of said district may by order duly entered, cause the treasurer of the district to transfer said surplus to any other fund against which there are outstanding obligations.''

Thus far the requirement is imperative that funds collected or received by the district be applied only to the purpose for which they are collected or received, except when that purpose has been satisfied any balance may be ordered by the board of directors transferred to another fund against which there are

outstanding obligations. Every dollar of tax money must be apportioned into as many parts as there are funds set up in the district's budget and each portion thereof paid out for the specific purpose for which it was levied and collected. This is the rule thus far deducible from the statute. The authority of the district's treasurer to pay out any of the district's money is a warrant upon the district signed by its president and secretary, except he may pay the principal of matured bonds and bonds called for payment before due without a warrant. (Section 3368.)

That the legislature intended that the district might in one instance depart from the strict rule of applying moneys received and collected for the specific purpose for which they were levied and assessed is quite evident from the provisions of section 3364, which are as follows:

"Payment of taxes levied for district purposes may be made with matured interest coupons or warrants of a district at their par value, when the aggregate amount of such warrants and matured interest coupons does not exceed the total amount of taxes due and to which aggregate amount a money payment sufficient to fully pay the balance of the said taxes is made."

The converse of the rule stated in section 3364 is that a district may redeem its warrants and matured interest coupons by satisfying a land owner's taxes when the two are the same in amount or are made so by cash; that is, it may pay its debts, when evidenced by warrants or matured interest coupons, with taxes, in disregard of the rule that taxes must be devoted to the specific purposes for which they are levied and collected.

It is contended by the plaintiff that the provision in section 3364 for the payment of taxes in any other medium than cash is an exception, and the only exception, and that the acceptance of tax anticipation

warrants for taxes is not authorized, and is therefore illegal. The defendants, on the contrary, justify the acceptance of tax anticipation warrants for taxes upon the language found in section 3389 as follows:

"To meet necessary expenses in anticipation of the collection of taxes, the board of directors may incur indebtedness by borrowing money or otherwise not exceeding the taxes for the current year [and], as evidence of such indebtedness may issue, negotiate and sell its warrants, or issue negotiable notes of the district payable not more than one year from date thereof."

This sentence was not in chapter 149, Laws of 1921, but was added to section 20 thereof (section 3389, Rev. Code) by chapter 36, section 3, Laws of 1922, Special Session, by way of an amendment. The Irrigation District Act as originally passed did not provide for the borrowing of money by the district upon its warrants or notes. Before this addition the word "warrant" had a very definite and certain meaning. It was a paper issued by the district as evidence of a proved and allowed claim against the district, drawn against a particular fund and payable in full on presentation to the district treasurer, if there was sufficient money in said fund, or if insufficient to the extent of such fund. If there was no money in the fund against which it was drawn, or if insufficient money, then the warrant was registered and bore interest at six per cent. per annum until paid. After registration, warrants were paid in the order of their presentation. Section 20, chapter 149, Laws of 1921. This statutory description or definition of a warrant is the common or ordinary one. Judge DILLON in volume 2 (5th ed.), section 850, says:

"A *warrant* is the command of the council, board or official, whose duty it is to pass upon the validity and determine the amount of a claim against the

municipality, to the treasurer to pay money out of any funds in the city treasury, which are or may become available for the purpose specified, to a designated person whose claim therefor has been duly adjusted and allowed." See, also, *Shelley* v. *St. Charles County Court*, (C. C.) 21 Fed. 699.

Dillon also says, in section 851:

"Being simply a means of paying a debt, it is necessarily implied that a valid debt or obligation of the corporation exists for which a warrant may be drawn. The warrant does not constitute a new debt, or evidence of a new debt, but is only the prescribed means for drawing money from the municipal treasury to pay an existing debt."

The instruments the board of directors is authorized to issue and sell in anticipation of taxes to meet the necessary expenses of the district, by whatever name called, are employed to borrow money, and, unlike a warrant proper, are not founded upon a claim against the district, but are themselves the origin or foundation of the debt. They differ also from a warrant proper in that they are not required to be drawn against a particular fund and are "payable not more than one year from date thereof" or a definite maturity. They are endowed with the qualities of commercial paper. They are made negotiable, the notes specifically and the warrants by language importing the qualities of negotiability. The board of directors "may issue, negotiate and sell its warrants, or issue negotiable notes of the district" is the language used. The word "negotiate" was used for some purpose. If the anticipation warrants were intended to be a mere acknowledgment of a debt, it would have been sufficient to have authorized their issuance. The word "negotiate," depending upon the context in which it is used, may sometimes mean the same thing as to sell, but to give it that meaning here would be tautological. It is almost a

word of art in connection with commercial paper. One of the definitions given the word by Webster, in his New International Dictionary, is:

"To transfer for a valuable consideration under rules of commercial law; to sell; pass;—said chiefly of commercial paper, as notes or bills of exchange, or of securities."

Warrants, as the word is used in section 3364, are not negotiable and are not payable at any definite time but only when there is money in the fund against which they are drawn. McQuillin, Municipal Corporations, vol. 5, § 2241.

The authority given is to borrow money and issue, negotiate and sell evidences of indebtedness therefor, which may be called either warrants or notes. In substance, the evidences of indebtedness authorized are the same. They differ only in name. There is no semblance of statutory authority for the acceptance of notes in payment of taxes. To hold that one of these instruments, identical in purpose and differing in name only, may be accepted in payment of taxes, would be, as we see it, a sacrificing of substance to form. We do not believe that the legislature, in using the word "warrant" in the amendment to section 3389, intended to extend the provisions of section 16 of chapter 149, Laws of 1921 (section 3364), to embrace instruments of the same name but issued and sold for an entirely different purpose.

The general rule is that taxes are payable in money only. *Weidler* v. *Arizona Power Co.*, 39 Ariz. 390, 7 Pac. (2d) 241.

A provision that taxes may be paid in certain instruments impliedly prohibits their payment in any other instrument. *Wynn* v. *Stone,* 69 Miss. 80, 13 South. 669; *Wyman* v. *Searle,* 88 Neb. 26, 128 N. W. 801; *Bammel* v. *City of Houston,* 68 Tex. 10, 2 S. W. 740; *Oneida County* v. *Tibbetts,* 125 Wis. 9, 102 N. W.

897; *J. M. Dougan Company* v. *Van Riper,* 109 Or. 254, 198 Pac. 897.

The manner of paying tax anticipation warrants or notes is with the taxes against which they are issued. These taxes are pledged for their payment, and, since under the terms of the law taxes levied and assessed for a specific purpose cannot be diverted to any other purpose, except when there is a surplus, the money borrowed in anticipation of the taxes cannot be used for maintenance and operation of the district to the exclusion of all the other funds for which they were levied and assessed. The "expenses" of the district are those set up in its budget, and the borrowing must be for each fund and apportioned as provided in section 3368. While this construction of the law as it stood in 1924, when plaintiff's bond was issued, is implicit and necessary to preserve the rights of the bondholders and other creditors, in the absence of any legislation thereon, still the legislature, in order to put at rest any doubt that might exist, by chapter 98, section 13, Laws of 1931, amended section 3389 by adding thereto this language:

"Moneys borrowed on the security of taxes assessed for specific purposes then remaining unsatisfied, shall be applied only to the purposes for which such taxes were assessed; moneys borrowed on the security of uncommitted or unapplied taxes may be used for any district purpose."

We are of the opinion that anticipation warrants may not be used in the payment of district taxes, and that the plaintiff's contention to that extent should be sustained.

There appears to be no legal objection to the district's issuing its warrants or notes in anticipation of the taxes, if the money so borrowed is apportioned to the different funds set up in the budget.

The judgment is reversed and the cause remanded, with directions to the lower court to issue an injunc-

tion against the district and its officers restraining them from accepting anticipation warrants in payment of district taxes.

McALISTER, C. J., and LOCKWOOD, J., concur.