[Civil No. 3673.   Filed December 9, 1935.]

[52 Pac. (2d) 467.]

MAJOR C. MALONEY, Appellant, v. HARRY MOORE, Treasurer of Maricopa County, Arizona, and Ex-officio District Treasurer of the Roosevelt Water Conservation District of Maricopa County, Arizona, Appellee.

Mr. George D. Locke and Mr. J. Bolivar Sumter, for Appellant.

Mr. Harry Johnson, County Attorney, and Mr. E. G. Frazier, Deputy County Attorney, for Appellee.

Messrs. Moeur & Moeur, for Roosevelt Water Conservation District, and *Amicus Curiae*.

ROSS, J.—Major C. Maloney as the owner and holder of 148 past-due coupons, of the face value of $3,840 payable to bearer and representing the semi-annual interest on certain bonds of the Roosevelt Water Conservation District, seeks by this action to *mandamus* the treasurer of Maricopa county, Harry Moore, who is also *ex-officio* treasurer of such district, to pay and satisfy such coupons. He alleges that said coupons fell due July 1, 1931, and were payable at the office of the treasurer of the district or at named banks of New York City, at the option of the holder; that the defendant has funds on hand

which have been set aside for the purpose of paying interest coupons when and as they become due; that he has tendered such coupons and demanded that defendant pay them; that the latter has refused to pay them; and that he has no plain, speedy, or adequate remedy at law.

The first question raised by the answer was whether the complaint states a cause of action. This question was presented by a general demurrer and what defendant designates as a "Plea in Abatement," but which in fact is nothing more than a special demurrer. It excepts to the sufficiency of the complaint, "for the reason," as it asserts, "that under the laws of the State of Arizona this defendant can only pay interest on irrigation district bonds upon the presentation of a warrant of the irrigation district directed to him and properly presented."

The court sustained the general demurrer without specifying the reasons therefor, and, the plaintiff electing to stand on the complaint, it was ordered dismissed.

The plaintiff appeals and assigns the ruling on the demurrer as error.

The Roosevelt Water Conservation District was organized under what is known as the Irrigation District Act, found in chapter 149, Session Laws of 1921, and brought forward as amended as article 2, chapter 81 (sections 3324–3430), Revised Code of 1928, with some slight changes immaterial to this case, since the bonds and coupons here involved were issued in 1924, 1925, and 1927, and before the revision. Our references, when considering the law under which the district was organized and the bonds issued, will be to chapter 149, *supra*.

The validity of the bonds and coupons is not questioned. The district is constituted a taxing unit of

the state, with power to issue and sell its serial bonds with coupons attached and to levy and collect taxes against the real property therein to pay such bonds and coupons. Section 13 says:

"Said bonds and the interest thereon, shall be paid by revenue derived from an annual assessment and levy of taxes upon the real property of the district, and the real property of the district shall be and remain liable to taxation for such payments."

The county treasurer is the treasurer *ex officio* of the district, and is authorized to collect and receipt for all taxes. Section 16 (a). The principal and interest of the bonds are payable at his office, or at such other place in the United States as may be determined by the board of directors of the district. Section 11 (b). It is required that bonds be designated as "series" and numbered consecutively. They are negotiable and of like force and effect. Coupons for the interest are attached to bonds and are payable semiannually on January 1st and July 1st, and not less than 5 per cent. of the bonds are payable each year, beginning the eleventh year after their issuance to and including the thirtieth year.

"No series of bonds issued hereunder shall have any priority of lien or other priority over any other series of bonds, and no bond of any series shall have any priority of lien or other priority over any other bond of said series." Section 11 (b).

It is the duty of the board of directors, on or before June 1st of each year, to estimate and itemize or budget the obligations of the district, current and fixed, for the next fiscal year, "including maturing bonds and interest, . . . " showing the amounts required for each specific purpose into which the funds of the district are divided. Section 15 (a). Money raised by taxation can be applied only to the objects

for which it is levied as long as such objects are unsatisfied. Section 15 (b). The board of supervisors of the county fixes the rate of levy based upon the calls in the budget. Section 15 (e). The district treasurer is required to divide all moneys received by him into district funds corresponding with the funds specified in the budget as made by the board of directors. And

"moneys received on account of interest on the bonded indebtedness of a district shall be kept in an interest fund or account; moneys received on account of principal, on account of bonded indebtedness of district shall be kept in a bond account or fund. . . . The district treasurer shall pay out of said bond fund the principal of bonds of said district at the time and place specified in said bonds, *and shall pay out of said interest account or fund the interest on the bonds of said district at the time and place specified therein* and shall pay out all of said other funds, except the fund for call and prepayment upon warrants of the district, signed by the president and countersigned by the secretary of said district." (Italics ours.) Section 16 (f).

The defendant says:

"The court's ruling on the demurrer was correct for two reasons: (1) No duty rests on the treasurer as *ex-officio* treasurer of the Roosevelt Water Conservation District to pay out any money as interest on bonds without a warrant of the district. . . . "

■■ We cannot give our consent to the correctness of the first proposition. As the law stood at the time bonds were issued, the treasurer of the district was expressly authorized and directed to pay out of the interest fund past-due interest coupons. The bonds and interest coupons were made payable at the treasurer's office or at named banks in New York City. In the revision of 1928, long after these obligations of the district were contracted, the legislature

omitted the direction to the treasurer to pay "*out of said interest account or fund the interest on the bonds of said district at the time and place specified therein*" (section 3368, Rev. Code 1928), apparently leaving the coupon holder in the same situation as any general creditor of the district. It is because of this omission in the statute that respondent claims plaintiff should obtain from the district's board of directors a warrant for his interest and present the warrant for payment instead of the coupons. We cannot believe the legislature intended such an absurd result. There would be as much reason to require the bondholder to present his bond to the board of directors for auditing. The interest is fixed and agreed upon in advance, and needs no auditing any more than the bond of which it is a part. The deletion in the statute must have been an oversight, and under the rule in *Re Estate of Sullivan*, 38 Ariz. 387, 300 Pac. 193, we should so treat it. See, also, *Maricopa County v. Hodgin, ante,* p. 247, 50 Pac. (2d) 15.

For another reason, it should not be construed as defendant insists, because to do so would change the time and place designated for the payment of interest coupons, long after they have been issued and sold. Warrants are payable only at the office of the treasurer of the district and are not payable at any time certain. *Roe v. Roosevelt Water Conservation Dist.,* 41 Ariz. 197, 16 Pac. (2d) 967, 969. Before the change in the statute, interest coupons were payable to bearer and at a time certain and either at the office of the treasurer or at the bank specified therein. Such a radical change as to time and place of payment would certainly impair the contract, which may not be done. *Dillingham v. Hook,* 32 Kan. 185, 4 Pac. 166; *Mazurkiewicz v. Dowholonek,* 111 Conn. 65, 149 Atl. 234; *Green v. Biddle,* 8 Wheat. 1, 84, 5 L. Ed. 547,

568. Defendant, however, is not without some justification for his contention, for in the Roe case, *supra,* we said *arguendo* that: "The authority of the district's treasurer to pay out any of the district's money is a warrant upon the district signed by its president and secretary, except he may pay the principal of matured bonds and bonds called for payment before due without a warrant," and cited section 3368, *supra.* When that language was used, the court was not considering the right or power of the legislature to change the terms of a contract for interest; it had before it only the changed statute and recited its provisions without considering the effect upon previous legislation or contracts previously made.

We conclude the interest coupons were all the plaintiff was required to tender to defendant in order to have them paid.

The demurrers admitted the material allegations of the complaint, and one of such allegations is that the defendant had on hand funds set aside to pay past-due interest coupons as they became due. We think this is a sufficient showing of defendant's ability as treasurer of the district to pay such coupons, and that the law required such payment as a duty resulting from his office of treasurer of the district. Section 4396, Rev. Code 1928. It certainly becomes his clear duty to retire matured coupons when he has in the interest fund or account moneys for that purpose. It should be borne in mind that in passing on the demurrers, so far as the court knows, there are no other overdue coupons than those sued upon. On the face of the complaint, the plaintiff is the only holder of overdue interest coupons and the only person entitled to such funds. If there were other holders of overdue interest coupons of the district, their right to any funds available to redeem

such coupons would not be made to appear by demurrer, but only by answer setting forth the facts. The general demurrers should have been overruled.

Finding that the complaint states a cause of action, ordinarily we would remand the cause for trial on the issues raised by the answer, but both of the parties seem anxious that we go further and decide the case on its merits and, since there are no disputed facts and the only questions are those of law, we have concluded to do so. The defendant in his answer admits that he has on hand $8,766.13 in the coupon interest fund, but says the district owes overdue interest coupons on $3,813,000 of its outstanding bonds, and that said sum of $8,766.13 on hand constitutes a trust fund for the benefit of all the holders of interest coupons, and that no holder of such coupons is entitled to any preference over any other holder but only to his *pro rata* share of such fund. He invokes the equity rule that, when there is a limited fund available to a number of creditors of equal standing, it will be treated as a trust and prorated among them, none being preferred over the others. Under this rule each creditor suffers his share of the loss, if the fund is insufficient to pay all claims in full.

The plan devised by the legislature for financing irrigation districts by authorizing them to issue and sell their serial bonds no doubt took into consideration the ability of such districts to repay such loans and provided accordingly. Under the plan, the interest was payable semiannually from the date of issue, and the principal was to be amortized in twenty payments, beginning eleven years after date of issue. Under the plan outlined, if followed, the treasurer would (unless the district defaulted) have on hand, or in course of collection, each January and July sufficient funds in the interest coupon fund with

which to pay all the coupons as they fall due, and while, of course, they could not be paid at the same time, or on the same day, the postponement of any payment of any of the coupons would not be for long and only until the taxes due or delinquent were paid. The sovereign state and those subdivisions of the state exercising the state's power of taxation are not supposed to default in their obligations, but to pay the semiannual interest coupons as they become due out of the taxes apportioned or appropriated for that purpose. There is nothing in the provisions of the statute requiring the bonds or coupons to be paid in the order of their number. The taxes collected to pay the semiannual interest coupons are not levied or collected for any particular coupons, as, for instance, those first presented or bearing the lowest serial number, but indiscriminately to pay interest coupons for the current year. Can it, or should it, be said, because theoretically the collection of taxes should balance the year's interest coupons, it was intended by the legislature if the collections should fall short that those coupon holders who first get into the treasurer's office should be paid in full while others with claims of equal dignity should receive nothing? It might not be so bad if the latter were delayed in getting their interest only the usual time required by solvent creditors to meet their obligations, but, where the taxing unit is in failing circumstances or insolvent, and there is no hope it will ever be able to pay such interest coupons, it would be inequitable to apply the rule "first come, first served."

There is a line of cases that has adopted the latter of the two rules as stated in *Voorhies* v. *City of Houston*, 70 Tex. 331, 7 S. W. 679, 683, as follows:

"If there be a fund to which more than one creditor is compelled to look as the only source from

which their claims can be paid, and this be insufficient to pay all in full, then it is manifestly just, none of the claims having a preference, that the fund should be distributed *pro rata*. When, however, there is a means through which all the creditors may be paid in full, the reason for directing a *pro rata* payment does not exist, and that one creditor, by the exercise of a higher degree of diligence than exercised by another, may secure payment at an earlier day than does the other, furnishes no reason why such other creditor, much less the debtor, should be heard to complain because a *pro rata* payment was not directed. As we have already seen, the city has power to levy such taxes as are necessary to satisfy every debt legally made and undertaken, existing at the time the present constitution was adopted, and there can be no pretense of its want of ability to raise means sufficient to pay in full every debt of that character. The fact that there are some uncollected taxes does not give to other creditors not before the court any right to a part of the particular fund to be realized from their collection, and especially so when it appears that the uncollected taxes were not levied for the benefit of any particular creditor, or class of creditors, but for creditors generally who held parts of the bonded indebtedness of the city.''

The reason for such rule is well stated in *Moran* v. *State,* 111 Fla. 429, 149 So. 477, as follows:

''When a fund has accrued in the hands of a debtor which is insufficient to pay all bonds payable out of such fund, one bondholder of the series for which the raising of such fund was pledged when the bonds were issued may have his bonds ordered paid in full from the funds in his debtor's hands, even though the fund at the time of bringing suit is not sufficient to pay all the outstanding bonds then matured, it appearing that the funds in hand are accruals from the exercise of an inexhaustible power of taxation, and that the whole fund required, of which the fund in hand is but a part, is replenishable by the further exercise of the taxing power, thereby enabling the

debtor to ultimately pay all who may have claims against the fund as a whole."

The contrary rule is very well put, we think, in *Thomas* v. *Patterson*, 61 Colo. 547, 159 Pac. 34, 37, as follows:

"The third question involved is: Has any coupon holder the right to have the funds in the hands of the treasurer applied in the payment of his coupons in preference to others of the same issue due at the same time, when there is insufficient to pay all, because the one holder may present his for payment before another, or perchance may be first in line, or be recognized first, arbitrarily or otherwise, by the county treasurer? The statute does not require that coupons shall be paid in the order of their presentation for payment; but, to the contrary, it in substance provides that the funds realized from the collection of taxes levied to pay interest maturing on any issue of bonds in a specified year is for the benefit of all holders of interest coupons which can be legally paid out of such funds."

And so it is seen the courts are not in accord. In the annotator's note to *State ex rel. Buckwalter* v. *Lakeland*, 90 A. L. R. 717 (112 Fla. 200, 150 So. 508), will be found the cases holding that a creditor of a public body is entitled to recover in full irrespective of the insufficiency of the funds to pay all like claims of equal dignity, and also those cases adhering to the *pro rata* or equality rule. In *State* v. *Duncan*, 334 Mo. 733, 68 S. W. (2d) 679 (decided in February, 1934), the *pro rata* rule is followed, overruling previous decisions holding to the contrary. This case was followed in *State ex rel. Grafeman* v. *Mulliniks*, (Mo. App.) 74 S. W. (2d) 93.

An examination of the cases discloses that the court's decision in most of them is more or less made to turn on the terms of the statute under which the public body is created. Turning to our statute, we find this statement:

"No series of bonds issued hereunder shall have any priority of lien or other priority over any other series of bonds, and no bond of any series shall have any priority of lien or other priority over any other bond of said series." Section 11 (b).

■■ It seems to us that this provision of the statute places the holders of bonds and coupons of the district, regardless of when they were issued and regardless of their serial numbers or the order of their presentment, upon an equality. Their liens upon the property of the district, and therefore upon the taxes collected from the district for their payment, are on the same footing. Neither is prior to the other. If the fund on hand is insufficient to pay all overdue coupons for which it was collected, then under the statute it should be prorated among them. This is especially true when to pay one will result in a preference and not merely a delay incident to the orderly collection of taxes. In the Duncan case, *supra,* 68 S. W. (2d) 679, at page 684, it is said:

"The rule announced in many cases is that when a trust fund raised by special assessment is insufficient to pay all having equal claims upon it, payment should be made ratably. If a drainage district be insolvent, .... all outstanding bonds (those not due as well as those matured) must be taken into consideration in the apportionment of the fund. If the district is solvent there still must be an apportionment, but it is limited to matured bonds and coupons because in that situation the statute pledges the fund on hand from time to time to the payment of matured (and after that next maturing) principal and interest."

This rule, we think, is the one that should be followed in this case and all others where the law adopts the *pro rata* or equality rule. See, also, *Groner* v. *United States,* (C. C. A.) 73 Fed. (2d) 126.

■ Whether paying the coupons sued upon would result in a preference is not possible for us to say on

the pleadings or the facts before us. It is suggested by *amicus curiae* that we should take judicial notice of the inability of the property owners to pay their taxes, that a very large percentage of the taxes are delinquent and unpaid, and that that is the reason why no more interest coupon taxes have been collected by the district. Of course, the members of this court are not ignorant of the deplorable tax situation, but we hesitate to say we judicially know the district is insolvent or unable to meet its obligations in the manner and time prescribed by the law.

We think the question as to whether the payment of the plaintiff's interest coupons would result in a preference or not depends upon the district's financial condition, and that such condition should be made an issue and be ascertained by the trial court and judgment rendered in accordance with the facts as found. The case is reinstated and remanded for such purpose.

LOCKWOOD, C. J., and McALISTER, J., concur.