[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On February 25, 1992, the plaintiffs, Ana Martinez and the Estate of Ruben Martinez, filed a four count complaint against the defendants Gine Ciuffetelli and MNC Credit, Inc (MNC, hereafter, the defendant). The first three counts are against Ciuffetelli. The first count alleges that on February 4, 1989, Ciuffetelli entered into a contract to perform work on the plaintiffs' property and that he breached the contract. The second count alleges that the contract was a "home improvement contract" which failed to comply with the requirements of the Home Improvement Act, General Statutes § 20-418 et seq., and is therefore not enforceable against the plaintiffs pursuant to General Statutes § 20-429. The third count alleges that the contract was subject to, and failed to comply with the Home Solicitation Sales Act, General Statutes § 42-134a, and is therefore not enforceable against the plaintiffs, pursuant to General Statutes § 42-135a.
The fourth count is against the defendant MNC. While that count incorporates all of the prior allegations of the complaint, the only allegations that implicate MNC area as follows. In conjunction with the contract entered into between the plaintiffs and Ciuffetelli, the plaintiffs were induced to sign a "Home Improvement Installment Contract" on the same day. Also on the same day, the contract was assigned to Sterling Resources, Ltd. The contract was then assigned by Sterling Resources, Ltd. to MNC. The plaintiffs allege that this agreement also was unenforceable because it, too, was subject to the provisions of the Home Solicitation Sales Act and is unenforceable under that act because it was assigned to a finance company within five days of its being signed. CT Page 2938-y
On January 5, 1995, the case was tried to the court. The case then embarked on an unfortunate odyssey.
On April 27, 1995, the court filed a memorandum of decision. The court dismissed the action with respect to the "Estate of Rubin Martinez" because an estate is not a legal entity. Judgment was entered against the defendant Ciuffetelli, who did not appear, on the first three counts for one dollar, no actual damages having been proved against him.
The plaintiff was nonsuited on the fourth count against MNC for failure to file her brief. In fact, on March 21, 1995, an unsigned document entitled "Plaintiff's Trial Brief" brief had been delivered not to the clerk but to the judges' secretaries but had never made its way into the court's file. On June 28, 1995, the plaintiff filed a motion to set aside the nonsuit. On July 8, 1996, the court (Hartmere, J.) granted the motion.
Meanwhile, the undersigned trial judge was assigned to another judicial district. The plaintiff's attorney resigned from the Bar. The attorney for MNC, in obvious frustration, wrote to the undersigned in New Haven and to the presiding judge pleading for something to be done to bring the action to a final judgment.
On May 20, 1999, MNC moved for summary judgment on the fourth count.[1]
On June 29, 1999, the plaintiff moved to amend the fourth count of her complaint to add the allegation that "[t]he defendant's failure to comply with the requirements of the Home Solicitation Sales Act and Home Improvement Act constitutes an unfair or deceptive trade practice under § 42-110b of the General Statutes." MNC has objected to the motion to amend.
 I
The court first addresses the motion to amend.
"While our courts have been liberal in permitting amendments . . . this liberality has limitations. Amendments should be made seasonably. Factors to be considered in passing on a motion to amend are the length of the delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment. . . . The motion to amend is addressed to the trial court's discretion which may be exercised to restrain the amendment court's pleadings so far as necessary to prevent unreasonable delay of the trial." Beckman v. Jalich Homes, Inc., CT Page 2938-z190 Conn. 299, 302-03, 460 A.2d 488 (1983). Here, all of these factors weigh heavily in favor of disallowing the amendment. The length of delay is monumental, the negligence in not offering the amendment sooner seems manifest, and allowing the amendment would be unfair to the defendant who has been crying out for finality for years.
It is true that "a trial court may be well-advised to exercise leniency when amendments are proffered in response to a motion for summary judgment, rather than on the eve of trial. . . ." ConferenceCenter Ltd. v. TRC, 189 Conn. 212, 216-17, 455 A.2d 857 (1983). However, there are also times when it is proper for a court to inquire into the substance of an amendment before allowing it. See Costanzo v. Hamden,18 Conn. App. 254, 257-60, 557 A.2d 1279 (1989). Here, the proposed amendment adds a legal conclusion — a CUTPA claim — for which there is no factual support. "`It is well settled that in determining whether a practice violates CUTPA [the Connecticut Supreme Court has] adopted the criteria set out in the "cigarette rule" by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, (competitors or other businesspersons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lessor extent it meets all three." (Footnote omitted.) Hartford Electric Supply Co. V. Allen-Bradley Co.,250 Conn. 334, 367-68, 736 A.2d 824 (1999). The complaint does not allege that MNC did anything other than accept an assignment of a contract which it is not alleged it has sought to enforce. It does not satisfy the "cigarette test." The motion to amend is denied.
 II
Turning to the motion for summary judgment, the defendant MNC has not filed an affidavit but has attached the contract documents as to which there has been, and remains, no dispute during the course of this litigation.
"The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitle him to a judgment as a CT Page 2938-aa matter of law. . . . Pursuant to Practice Book §§ 17-45 and 17-46, the party adverse to such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . .
"While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion . . . a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment . . . On appeal, however, the burden is on the opposing party to demonstrate that the trial court's decision to grant the movant's summary judgment was clearly erroneous. . . .
"Equally well settled is that the trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [T]he trial court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." (Citations omitted; internal quotation marks omitted.) Harvey v. Boehringer Ingelheim Corp.,52 Conn. App. 1, 4-5, 724 A.2d 1143 (1999). In ruling on this motion, therefore, it is therefore irrelevant that I have sat as a trier of fact in the case, although the plaintiff has submitted the trial transcript in support of her opposition to the motion.
The defendant's brief in support of its motion for summary judgment sets forth the following three issues: (1) whether a person who was once an owner of real property may maintain an action pursuant to the Home Improvement Act (HIA), General Statutes § 20-419, and/or the Home Solicitation Sales Act (HSSA), General Statutes § 42-134a, after the date she no longer owns an interest in the real property subject to the home improvement contract; (2) whether HSSA is applicable to the improvements made upon real property formerly owned by the plaintiff; and (3) whether HIA or HSSA creates an independent cause of action by the plaintiff against the defendant, a holder of the note and mortgage.
 A.
The defendant argues that the plaintiff is no longer an owner of the real property and, therefore, cannot maintain an action under HIA. The plaintiff argues the following: (1) she was the record owner of the property when she commenced the action; (2) she was and is now an "owner" within the meaning of HIA as she has continuously resided at the CT Page 2938-ab property since the inception of the contract to the present; and (3) the transfer of ownership had no effect on her status as a party to the home improvement contract. The plaintiff contends that, for these three reasons, the defendant's first argument must fail.
HIA defines "owner" to mean "a person who owns or resides in a private residence and includes any agent thereof." (Emphasis added.) "When legislation contains a specific definition, the courts are bound to accept it." (Internal quotation marks omitted. Johnson v. Manson,196 Conn. 309, 316, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063,106 S.Ct. 813, 88 L.Ed.2d 787 (1986). Since there is no dispute that the plaintiff resides in the house, she is an "owner" for purposes of HIA.
 B.
The defendant argues that because the work performed under the contract was incorporated into the plaintiff' s residence and became a part of her real property, HSSA does not apply. The defendant cites the following two Superior Court opinions in support of its argument:Jackson V. Fortunato, Superior Court, judicial district of Stamford at Stamford, Docket No. 96695 (July 31, 1996, Ryan J.) (17 Conn.L.Rptr. 250); and Habetz v. Condon, Superior Court, judicial district of Ansonia- Milford at Milford, Docket No. 33236 (September 27, 1991, Fuller, J.), aff'd on other grounds, 224 Conn. 231, 618 A.2d 501 (1992). The plaintiff argues the following: (1) the contract specifically states that the "contract is based upon a home solicitation sale, which is subject to the provisions of the Home Solicitations Sales Act"; and (2) HIA specifically states that HSSA applies to each home improvement contract.
The defendant's reliance on Jackson and Habetz is misplace. Jackson
dealt only with HSSA and not HIA. Furthermore, Jackson involved the construction of a new home, specifically excluded from coverage under HIA. The language of HIA states, "`[h]ome improvement' does not include: (A) The construction of a new home. . . ." General Statutes § 20-419
(4) This case is distinguishable because it does not involve construction of a new home. Furthermore, once HIA is involved, HSSA, by statute, is involved. "Each home improvement "contract entered into shall be considered a home solicitation sale pursuant to Chapter 740 and shall be subject to the requirements of said chapter. . . ." General Statutes § 20-429 (e). Habetz is also distinguishable because that case involved bad faith on the part of the homeowner. There is no allegation that bad faith on the part of the homeowner is involved in this case. CT Page 2938-ac
The Supreme Court has "noted that the legislature has specifically addressed the relationship between the Home Improvement Act and the Home Solicitation Sales Act in a 1988 amendment to the Home Improvement Act providing that `[e]ach home improvement contract entered into shall be considered a home solicitation sale pursuant to chapter 740 and shall be subject to the "requirements of said chapter. . . .' Public Acts 1988, No. 88-269, § 9; General Statutes § 20-429(e)." A. Secondino Son, Inc. v. LoRicco, 215 Conn. 336, 343-44 n. 10, 576 A.2d 464 (1990). Additionally, "[a] contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." (Internal quotation marks omitted.) Lawson v. Whitey'sFrame Shop, 241 Conn. 678, 686, 697 A.2d 1137 (1997). Not only does the statute provide that HSSA applies to all home improvement contracts, but this contract specifically states that "[t]his contract is based upon a home solicitation sale, which sale is subject to the provisions of the home solicitations sales act."
This contract is a home improvement contract. By virtue of the statute and the terms of the contract, the Home Solicitation Sales Act applies to this contract. The defendant's motion for summary judgment on the ground that HSSA does not apply is denied.
 C.
The defendant also argues that not only does a document have to be executed, it must also be delivered to be effective, and the plaintiff has not pleaded delivery. Not only does the defendant fail to cite authority for this proposition, this proposition does not relate to the question posed by the defendant. Therefore, the court will not address this argument.
The defendant argues that neither HIA nor HSSA provide an independent cause of action for a homeowner against a contractor. The defendant cites to several Superior Court opinions for this proposition. The plaintiff argues that since a violation of HIA or HSSA is a per se CT Page 2938-ad violation of the Connecticut Unfair Trade Practices Act (CUTPA), HIA and HSSA do provide an independent cause of action. Further, the plaintiff appears to argue that she does not "need to allege a violation of CUTPA since a violation of HIA or HSSA is a per se violation of CUTPA.
In 1990, the Supreme Court, in dicta, addressed the possibility that HIA could be employed as a "sword rather than as a shield." BarrettBuilders v. Miller, 215 Conn. 316, 328, 576 A.2d 455 (1990). The court invited "the legislature . . . to distinguish between a homeowner's invocation of the statute as a defense to an action by a contractor and a homeowner's affirmative reliance on the statute to recover a down payment or progress payments that represent work performed in good faith by a contractor." Id., 328. The court declined, however, to "supply these forms of recovery absent authorization from the legislature." Id., 329. "Section 20-429 (a) is intended as a protection for a homeowner against enforcement of a home improvement contract which does not comply with the statute. It questionable whether it can be used as an offensive weapon to recover damages or refunds of previously undisputed progress payments made while the work was performed." Habetz v. Condon, supra, Superior Court, Docket No. 33236.
While the Appellate Court and Supreme Court have not answered the question of whether HIA gives rise to an independent cause of action, Superior Courts have ventured to do so. One court has stated: "It is the court's opinion that neither the Home Improvement Act nor the Home Solicitation Sales Act give rise to a cause of action by the plaintiff against the defendant . . . . They are defenses and do not provide an independent cause of action for a homeowner against a contractor."McClain v. Byers, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 301761 (April 12, 1995, Hauser, J.) (1 Conn. Ops. 562). Other judges have agreed: "[The Home Improvement Act] provides a homeowner with a defense. It cannot e used as an offensive weapon. It merely invalidates a contract irom being enforced." Thompson v. Brevetti, Superior Court, judicial district of Waterbury at Waterbury, Docket No. 106806 June 10, 1993, Pellegrino, J.) (9 Conn.L.Rptr. 243, 244). "It is the court's opinion that the weight of the case law on this type of suit by a homeowner suggests that Conn. Gen. Stat. § 20-429 is a defense and does not provide an independent cause of action for a homeowner against a contractor." Benedetto v. New Bath, Inc., Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 106862 (August 29, 1990, Ryan, J.). "However, generally Connecticut General Statutes 20-429 does not create an independent cause of action."Rephan v. Clohessy Building Company, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 295925 (April 2, 1991, CT Page 2938-aeMcKeever, J.) (6 C.S.C.R. 425).
This court need not weigh in on this issue. First, even if a cause of action for damages could be implied into the HIA or the HSSA, there is no allegation that MNC did anything that violates either Act. It is true that the HSSA, in General Statutes § 42-135a(8), provides that no agreement in a home solicitation sale shall be effective if the seller shall "negotiate, transfer, sell, or assign any note or other evidence of indebtedness to a finance company or other third party prior to midnight of the fifth business day following the date the contract was signed or the goods or services purchased." But there is no claim that MNC did any of these things. "Negotiate," in this context, means to transfer. Webster's Ninth New Collegiate Dictionary (1991); see Roe v.Roosevelt Water Conservation Dist., 41 Ariz. 197, 16 P.2d 967, 970
(1932).
The plaintiff, however, has also requested a release of the mortgage. A mortgage is a serious encumbrance of any property interests the plaintiff may have in the real estate. Cf. Connecticut v. Doehr, 501 U.S. 1,2, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991); Giordano v. Giordano,39 Conn. App. 183, 212, 664 A.2d 1136 (1995). In effect, the plaintiff is relying on the violations of HIA and HSSA not as a sword, but rather as a shield against the mortgage. The claim for relief in the complaint states: "Wherefore, the plaintiffs claim money damages, a return of all money paid to date on the home improvement installment contract, a release of the mortgage on plaintiffs' property which secures the home installment contract and court costs."[2]
The plaintiff, however, concedes that she is no longer the owner of the property. Therefore, the mortgage does not encumber her property interest. Whether the owner of the property may now seek a declaratory judgment that the mortgage is invalid is not before the court. But see, e.g., DeDominicis v. Cornfield Point Assn., 154 Conn. 504, 227 A.2d 89
(1967); cf. Stone Stone Pension Plan v. Alston, 12 Conn. App. 670,533 A.2d 898 (1987). The plaintiff clearly lacks standing to do so.
The plaintiff may not construct a private cause of action for damages against MNC based on HIA and HSSA. She may not seek a declaration as to the validity of the mortgage since it does not encumber her property. For this reason, the motion for summary judgment of the defendant MNC is granted.
Bruce L. LevinJudge of the Superior Court
CT Page 2938-af