[Civil No. 3870. Filed January 24, 1938.]

[75 Pac. (2d) 366.]

'STATE OF ARIZONA ex Rel. CHARLES P. MULLEN, State Land Commissioner of The State of Arizona, Appellant, v. JERRY HEDRICK, Appellee.

Mr. Joe Conway, Attorney General; Mr. Elmer C. Coker, Mr. Otto E. Myrland and Mr. Charles P. Elmer (of Counsel), for Appellant.

Mr. Francis M. Hartman and Messrs. Knapp, Boyle & Thompson, for Appellee.

LOCKWOOD, J.—This is an appeal by the State of Arizona, on the relation of Charles P. Mullen, as state land commissioner, hereinafter called plaintiff, from a judgment in favor of Jerry Hedrick, hereinafter called defendant, refusing to cancel a mining operator's lease granted by plaintiff to defendant covering

certain lands belonging to the State of Arizona, located in a part of section 2, township 20 north, range 20 west, G. & S. R. B. & M.

There are six assignments of error. The first is that the court erred in refusing to adopt some seventeen findings of fact submitted by the plaintiff; the second that the court erred in refusing to adopt five conclusions of law proposed by plaintiff; the third that three findings of fact made by the court are contrary to the evidence; the fourth that one particular finding of fact set forth therein is not sustained by the evidence; the fifth that the court erred in adopting three conclusions of law proposed by defendant; and the sixth that the court erred in refusing to permit a witness to answer four specific questions. We shall apply to them three tests: First, were the findings of fact made by the trial court sustained by the evidence; second, were they sufficient to cover all the issues of fact necessary for a determination of the law applicable to the case; and third, did the court properly apply the law.

This action arose out of the following situation. Defendant herein applied to the State Land Department for a lease of certain mineral lands in section 2, *supra,* under the provisions of section 2973, Rev. Code 1928, which reads as follows:

"*Lease of mineral lands; forfeiture.* The department may execute leases and contracts for the leasing of lands containing gold, silver, copper, lead or other valuable minerals; shale, slate, petroleum, natural gas, or other valuable natural deposits. Any citizen of the United States finding valuable minerals upon any unsold lands of the state may apply to the department for a lease of an amount of land not exceeding the amount and dimensions allowed by the mining laws of the state and of the United States. The manner of locating a mineral claim upon state land shall be in accordance with the law of the state regulating the location of mineral claims on government lands. For the

purpose of developing such claims, the applicant shall, upon the payment of five dollars for each claim, receive from the department a lease for two years, before the expiration of which time the department may enter into a contract with the lessee for the further development and operation of any mine upon such claim, upon such terms as may be agreed upon. Not more than fifty tons of ore shall be removed from the premises until such contract has been executed. The lessee may cut and use the timber upon the claim for fuel and for the construction of buildings required in the operation of any mine on the claim, or necessary for drains, tramways, and supports for such mine, but for no other purpose.

"Whenever such lessee is convicted of fraud or wilful misrepresentation in procuring such lease, or violates any term, condition or covenant of such lease or contract, he shall forfeit the lease or contract to such mine or claim, and all improvements placed thereon, or used in connection therewith, and all property thereon, and the right, title or claim thereto shall vest in the state."

A lease was duly issued to him. Thereafter the land commissioner, acting under the instructions of the State Land Board, brought a suit to cancel the lease under the provisions of section 2971, Revised Code 1928, which is in the following language:

"*Cancellation of lease.* Before any action may be brought for the cancellation of a lease the land department shall hold a public hearing after due notice thereof to the lessee or assignee. The department may then order the commissioner to bring an action to cancel said lease and if it appear that such lease was procured through fraud, deceit or wilful misrepresentation, the court shall cancel said lease and forfeit the improvements on the land to the state; but should said lease be canceled for any other reason, then the lessee shall be permitted to remove his improvements at any time within sixty days."

At the trial of the case it was agreed that the vital allegations upon which the action was based were set

forth in paragraphs XII and XIII of plaintiff's·complaint, which read as follows:

"XII. Your complainant is informed and believes, and upon such information and belief alleges that on December 26, 1935, there were prospectors lawfully on the land described in the defendant's written application other than employees of the defendant; that there were no abandoned workings on said property sought to be leased; that said property had not been located by the defendant in full compliance with the mining laws in such cases made and provided; that the defendant did not·have an option to purchase the improvements on the property sought to be leased, but that said improvements belonged to persons or parties other than said defendant."

"XIII. This complainant further alleges that the facts set forth in the paragraph next preceding were known to the defendant at the time said defendant applied for the said lease and at the time he received said lease, but that notwithstanding such knowledge the defendant fraudulently, under oath and in writing, misrepresented said facts to the State Land Department with the intention to.deceive said State Land Department and thereby cause him to issue the said lease to said defendant; that the State Land Commissioner, relying on said representations made by the defendant, executed and delivered a lease in the name of the State of Arizona, covering the lands more particularly described in defendant's application for operator's lease, as hereinbefore set forth, in favor of the defendant, Jerry Hedrick."

The sole issue for the court to try, therefore, was whether defendant had procured his lease by fraud, deceit, or willful misrepresentation of the nature alleged in said paragraphs XII and XIII, *supra*.

The trial was before the court sitting without a jury, and much evidence, both documentary and oral, was introduced. At the close of the case the court found, in substance, the following facts: The State of Arizona ever since January 25, 1927, had been the sole, exclusive, and unconditional owner of the land involved

in this action, including all of the mineral and mineral rights thereof, and from and after said date such mineral rights were not subject to location under the laws of the United States, but were subject solely to the law of the State of Arizona. Notwithstanding this fact, on July 3, 1927, M. E. Creel located three mining claims under the federal statute, as being upon lands belonging to the United States of America, without any attempt to comply with the state law governing the matter, being the Tin Cup, Tin Cup No. 1, and Water Witch. He deeded his rights under these locations, together with all the equipment and personal property thereon, to J. P. Loftus on July 5th. On May 19, 1933, Loftus gave to S. S. Jones and C. W. Hymer an option of purchase of the claims for $20,000. Thereafter, Loftus, Jones, and Hymer joined in an option on the said claims to James M. Hall. The Hall option was later assigned to the Tin Cup Mines Co., Inc., a corporation organized under the laws of Arizona, and this corporation on September 30, 1935, gave defendant an option to purchase all its rights under the Hall option, for $60,000, to be paid in certain installments. On or about December 17th, the defendant discovered these mining claims were on land belonging to the State of Arizona, and immediately notified the Tin Cup Mines, Inc., and Jones, of this fact. By this time he had paid the company $750 on account of his option, and had expended on the property several hundred dollars in development. On December 20th defendant informed the State Land Department of the foregoing facts in regard to the location by Creel, and the various transfers by which he had obtained an option on the property, and that he, Hedrick, desired a mineral lease on the lands, and on December 21st mailed to the state land commissioner an application for a mineral lease on the lands covered by the mining claims, describing them as originally located. On De-

cember 26th defendant was notified by the Land Department that the description in his application would have to be changed so that the land applied for was described by legally surveyed subdivisions, in accordance with the rules and regulations of the State Land Department. He immediately, accompanied by his attorney, went to Phoenix and made out a new application under the direction of the state land commissioner and his office assistants, and the lease which is the subject matter of this action was thereafter issued to defendant. Shortly thereafter the claims as described in the lease were actually located on the ground, and defendant, between that time and the trial of the action in the lower court, expended in the development of the property approximately $14,000. At the time defendant applied for the lease, the ground was open and subject to lease by the State to the first applicant, neither Loftus, Jones, Hymer, Hall, nor the Tin Cup Mines, Inc., nor any other person, ever having had a lease on any of the said ground from the State of Arizona. The foregoing facts are fully sustained by the evidence and, indeed, with the exception of that as to the actual location of the claims on the ground after the issuance of the lease and that at the time defendant applied to the State Land Department for the lease the same was open and subject to lease to the first applicant, they are not seriously questioned by plaintiff.

The 17th finding of fact is the vital one upon which the case turns, and is in the following language:

"That on December 26th, 1935, the date of said application, there were no prospectors on the land described in said application other than employes of the defendant; that when filing said application defendant did not know of any mining claims of Matt McCarthy or Steffan Subik that overlapped the land described in said application; that neither the said Matt McCarthy nor the said Steffan Subik ever applied for a

lease to any of said ground or sought plaintiff's protection in any way; that on said date there were workings on said land which were not abandoned but were being used by and in the possession and charge of defendant and his employes; that on said date said land as described in said application was not located on the ground but, under the direction of the State Land Department, was located by the defendant and the State Land Commissioner, his deputies and employes, on the map, which became a part of said application; that when the lease was granted to defendant the State Land Commissioner knew that the land located upon said map was not located on the ground in compliance with the mining laws and on that point was not deceived; that shortly thereafter said locations so drawn on said map were actually made upon the ground in accordance with the directions of the State Land Department; that the granting of mining leases by the State in accordance with maps and descriptions for the first time made and determined in the office of the State Land Commissioner and before the locations as shown and described were actually made on the ground was, at the time of defendant's application, in accordance with the regulations of the State Land Department; that at the time said application was made there were on the ground improvements which defendant had an option to purchase; that the defendant made no statement in said application with the intention of deceiving the State Land Commissioner or the State Land Department; and that neither the State Land Department nor the State Land Commissioner was deceived by any statement so made.''

The evidence as to this finding is in sharp conflict. It is our universal rule that any conflict of evidence will be resolved in favor of the finding of the trial court, and there is undoubtedly ample evidence in the record which, if believed by the court, and it evidently was so believed, would sustain the finding.

We have examined carefully all of the proposed findings of the plaintiff which the trial court refused to adopt, and which form the basis of the first

assignment of error, and are of the opinion either that the findings are immaterial, as having no bearing upon the proper issues of the case, or else that they are based upon a conflict of evidence which has been resolved against plaintiff by the trial court. The request for many, if not most, of these findings, was apparently based upon the theory of the law of the case presented by plaintiff, as more particularly appears from its second assignment of error. This was that fraud, deceit, or willful misrepresentation practiced upon a third party by the defendant, but which was never known to the Land Department until long after the lease had been issued, and which in no way induced the department to issue it, but which might have caused the Land Department to decline to issue the lease if such conduct had been called to its attention by anyone, constitutes a legal ground for cancellation of the lease. We think this theory of the law is erroneous. In the first place, the language of the statute is "if it appear that such lease was procured through fraud, deceit or wilful misrepresentation" it shall be canceled. It does not say that if there has been fraud, deceit, or willful misrepresentation practiced on a third party, which, if known to the Land Department, would have caused it to refuse the lease, or that if the applicant has failed to disclose such facts the lease shall be canceled. The sole basis for cancellation is that one of the moving causes for the issuance of the lease must have been conduct of the nature set forth in the statute, and it is obvious that conduct which was unknown to the Land Department at the time it issued the lease could never have been a moving cause towards granting or not granting it. It may be true, as contended by the plaintiff, that defendant was guilty of actionable misrepresentation towards third parties in regard to the entire transaction. If this be true, these parties have their remedy in a court of

equity, but their rights cannot be considered in a statutory action for the cancellation of a lease on the ground of fraudulent representations to the state itself. Such being the law, the court did not err in refusing to adopt either the findings of fact or the conclusions of law proposed by plaintiff and set forth in its assignments of error Nos. 1 and 2.

The third assignment of error questions the following findings of fact:

"(No. 13) The claims as described in the lease were very shortly after December 26, 1935, actually located on the ground, January 8, 1936, as directed by the State Land Department."

"(No. 15) At the time defendant, Hedrick, applied to the State Land Department for a mineral lease on said ground the same was open and subject to lease to the first applicant."

We need not consider whether finding No. 13 was sustained by the evidence or not, for the reason that the law does not require as a condition precedent to the issuing of a lease that it shall first be located on the ground in accordance with the state law, nor is a failure to make such location, even though required, a ground for cancellation under section 2971, *supra*. So far as finding No. 15 is concerned, the objection is based on the contention that Loftus, Jones, Hymer, Hall, and others, prior to the issuance of the lease to defendant, were in possession of the ground which was leased to him, and had placed valuable improvements thereon, and by so doing had created rights which were superior to the rights of defendant, and which could not be taken away without notice. Plaintiff has evidently overlooked the provisions of section 2977, which read as follows:

"*Recovery of lands unlawfully held.* Nothing herein shall confer any rights whatsoever upon occupants or lessees of any lands, who have not taken out a lease under the provisions hereof, and the commissioner

shall examine into the rights of all persons in possession of state lands, or improvements thereon, or claiming compensation for improvements on such lands, and, if he finds that any person is unlawfully in possession of such lands, or is unlawfully claiming compensation for such improvements, he shall, with the approval of the department, bring an action to recover possession of such lands and improvements, or otherwise establish the rights of the state,''

and has confused the rights of *bona fide* lessees, under section 2976, Revised Code 1928, with rights possessed, or rather *not* possessed by occupants without a lease. It is not contended that any of the parties named had ever taken out a lease to the land involved in this action at any time whatever, and the statute expressly says that nothing in the Land Code shall confer any rights upon mere occupants who have not brought themselves within these provisions of the Code. It may be that such a law is harsh, but it is fully within the power of the legislature to pass, and it is the judge of questions of policy, and not the courts.

The fourth assignment of error is that finding No. 14, which reads as follows: ''Defendant, Hedrick, from the date of obtaining the lease, December 26, 1935, up to the trial of this action, September 16, 1936, had expended on the property the sum of $14,000.00,'' was not sustained by the evidence. We need not consider this assignment for it could not in any way affect the proper rule of law to apply to the case. Whether defendant had expended $14,000, or any other sum, on the property before or after he acquired his lease, is immaterial in an action of this nature.

The fifth assignment of error is necessarily determined by what we have already said. Since the seventeenth finding of fact was sustained by the evidence, the court properly drew the conclusion of law that the lease was not obtained by fraud, deceit, or

willful misrepresentation, and that plaintiff was not entitled to have the lease canceled.

The sixth assignment of error refers to the refusal of the court to permit the land commissioner to state what he would have done under certain hypothetical conditions, which the evidence shows, even if true, were not known to him at the time he issued the lease. What we have said in the previous part of this opinion shows clearly that the court was not in error in refusing to permit the questions to be answered. The question before it was merely whether or not the defendant had been guilty of fraud in answering certain specified questions in his application for the lease, not whether the Land Department would have acted differently under a different set of circumstances. There was evidence presented which would indicate strongly that the Tin Cup Mines, Inc., may have a right of action against defendant. If so, there is an ample remedy, but it is not in an action of this kind.

The judgment of the superior court is affirmed.

McALISTER, C. J., and ROSS, J., concur.