187 P.2d 636

**SHUMWAY et al. v. FLEISHMAN et al.**

No. 4932.

Supreme Court of Arizona.

Dec. 15, 1947.

Jennings & Tenney, of Phoenix, for appellants.

Laney & Laney and W. H. Chester, all of Phoenix, for appellees.

LaPRADE, Justice.

This is an appeal from a judgment of the superior court, sitting without a jury, vacating and setting aside a tax deed executed and delivered by the county treasurer of Maricopa County. The parties will be designated as they appeared in the lower court, the appellants as plaintiffs and the appellees as defendants. Plaintiffs who had acquired title by tax deed brought suit to quiet title to a quarter section of land located in the New State Irrigation and Drainage District. In 1938 the property was advertised and sold for delinquent taxes, the major portion of which was district taxes as distinguished from state, county, and school district taxes. The property was struck off to the state and a certificate of purchase was executed and retained by the treasurer for the benefit of the state. Under the law the holder of a certificate of purchase becomes entitled to a deed upon the expiration of five years provided no redemption has been made. In February, 1944, the treasurer advertised in the manner prescribed by law that demand had been made for a deed, and that the same would be delivered within the statutory time in the event no redemption was made. Under this advertisement the state would have become entitled to a deed to the property on March 27, 1944. On March 22, 1944, plaintiffs went to the treasurer's office and purchased this particular certificate of purchase, paying therefor the sum of $1,375.18.

At the time (1938) that the county treasurer published his delinquent tax list and notice of sale for delinquent taxes it was stated that $4,004.21 plus interest and penalties amounting to $1,070.78 was the amount of taxes due. The delinquent taxes for which the property was sold covered the years 1933 to 1937 both inclusive. The delinquent taxes without interest and penalties were: state and county $353.87, personal property $4.65; school district $106.-

07; irrigation district $3,539 62. Pursuant to this notice the property was sold to the state for $5,076.19.

In August, 1939, the irrigation district entered into an arrangement whereby its bonded indebtedness was refinanced under an agreement between the district, its land owners, the Reconstruction Finance Corporation, and Salt River Valley Water Users' Association. By virtue of this refinancing agreement and resolutions adopted by the district, all interest charges and penalties on delinquent taxes assessed for district purposes were forgiven; the principal of delinquent taxes was not forgiven but was to be paid over a period of years at the rate of one dollar per acre per year without interest.

■ The New State Irrigation and Drainage District was organized as an irrigation district under ch. 149, Laws 1921, and amendments thereof, carried forward into the Revised Code of 1928 as ch. 81, art. 2, sec. 3324 et seq., and now appearing under various articles of ch. 75, A.C.A. 1939. Irrigation districts organized under the foregoing provisions now are political subdivisions of the state since the adoption, November 27, 1940, of sec. 7 of art. 13 of the State Constitution. The relevant statutory provisions in effect at the time the taxes here under consideration were levied had been interpreted by this court. These decisions had established that irrigation and similar improvement districts were quasi-municipal corporations having a pub-

lic purpose, in some respects municipal in their nature in that they exercised the taxing power. Day v. Buckeye Water etc. District, 28 Ariz. 466, 237 P. 636; State v. Yuma Irr. District, 55 Ariz. 178, 99 P. 2d 704; Maloney v. Moore, 46 Ariz. 452, 52 P.2d 467. District taxes and assessments are levied and assessed by the board of county supervisors upon estimates certified by the board of directors of the district, and thereafter become a lien and are collectible as other taxes. The county treasurer is constituted ex-officio district treasurer with the duty to collect district taxes and assessments in the same manner and at the same time that he collects general state, county, and school district taxes.

To relieve the treasurer of the burden of keeping the records and to facilitate collections, the records of the county treasurer relating to the taxes of this district were transferred to the offices of the Salt River Valley Water Users' Association, which undertook to collect the taxes, issue receipts, etc. It was during this hiatus in the affairs of the district that the irregularities hereafter noted, and which appear in the findings of fact made by the trial court, transpired.

"Findings of Fact

"At the time when the County Treasurer's records were transferred to the office of the Water Users' Association in December, 1940, there was a balance of $4,304.54 due upon the principal of these delinquent

District taxes, which amount still remained a lien upon the land in question; and as of the date of the trial there remained against the land on account of these delinquent taxes the amount of $3,754.54, which still has to be paid off at the rate of one dollar per year. .

"On February 25th and March 3rd, in the year 1944, the County Treasurer published his notice that the state of Arizona had applied for a Treasurer's Deed to the lands therein described. This notice stated that the lands had been sold to the state on February 1, 1939, for taxes, interest, penalties, and charges in the amounts set opposite the respective descriptions, and then it set out opposite the description of the land in question the sum of $606.32 (includes treasurer's fees of $1.50) instead of the figure $5,076.19 which was in truth the amount for which the premises had been sold to the state on February 1, 1939. * * *"

\*      \*      \*      \*      \*      \*

"This 1944 notice that the State had applied for a tax deed was not seen by (defendants) J.L. Dawson or Elsie W. Fleischman, or her attorney, but on or about March 1, 1944, Dawson's neighbor, one Bill Luke, told him that he had noticed where apparently the 'brush part' of said land was being advertised for a tax deed for some $600, it being a further fact that approximately fifty acres of the quarter section in question was still in brush and not being served with water."

Some time between March 1 and March 15, 1944, defendant Dawson, being desirous of redeeming the property from the tax sale, made inquiry from some of the deputies in the treasurer's office as to the amount required to redeem. From the findings of fact, supported by the evidence, it appears that he was informed that it would require the amount shown on the face of the certificate of purchase, together with further accumulations, making a total of $7,998. At this time Dawson secured from the county treasurer a delinquent tax statement containing this last-named figure, which he delivered to the attorney of defendant Fleishman, who was selling the property to Dawson on a contract of sale. This attorney went to the office of the county treasurer and secured the same information that had been given Dawson. Dawson and the attorney both testified, and the court so found, that had they known that the property could be redeemed for $604.82 plus subsequent accruals they would have redeemed the property, but that they were frustrated in so doing on account of incorrect information given to them. The court further found that Dawson and the attorney under all the circumstances had the right to rely upon the aforesaid representations made and the delinquent tax statement furnished by personnel of the county treasurer's office, and acted reasonably, and were not guilty of negligence in so relying upon the same.

The refinancing arrangement, the forgiveness of interest and penalties, and the deferment of collection of principal owed on account of district taxes were presumably brought to the attention of the county treasurer. With reference to the conduct of the county treasurer, the court made the following findings: "That at a time between the time early in March, 1944, when J. L. Dawson made his aforesaid inquiries at the county treasurer's office, and the time of the assignment by that office to the plaintiffs of the certificate of purchase, the figures $5,076.19, appearing in said certificate of purchase as the price for which the land had been sold on February 1, 1939, were stricken out and in lieu thereof there were inserted the figures $606.32, as the price for which the land had been sold to the State of Arizona. That the advertisement of March, 1944, giving notice that a tax deed had been applied for, named the figures $606.32 as the amount for which the property had been theretofore sold, notwithstanding the fact that in truth the amount for which it had theretofore been sold was $6,076.19. That said figure of $606.32 was not even the portion of the original sale figure which remained against the land, because the taxes assessed for irrigation district purposes constituted approximately 88% of the amount for which the premises had been sold to the State, and the greater part of the principal of such district taxes still remained a lien against the land, to be paid off at the rate of $1.00 per acre per year."

In response to plaintiffs' complaint to quiet title, defendants filed an answer and cross complaint asserting title in themselves; alleging most of the foregoing facts and further that the sale of the certificate of purchase and issuance of deed to plaintiffs were illegal and without authority of law; and praying that the deed be voided. Plaintiffs were denied any relief on their complaint, and judgment went for defendants on their cross complaint, appropriate provision being made to reimburse plaintiffs for the amount of money they had invested in the certificate of purchase less a reasonable rental fee for the time they were in possession, and permitting them to move a house that they had placed on the premises which was readily removable.

Appellants' assignments of error and propositions of law in support thereof are as follows:

"Assignment of Error No. II.

"The Court erred in granting judgment to the defendant on the evidence adduced at the trial, for the reason that the defendant, J. L. Dawson, upon whose testimony and acts the entire case turned, admitted knowledge of facts sufficient to put him on notice of the situation in the Treasurer's Office, which preclude him from denying such knowledge and preclude him from obtaining any equitable relief under the circumstances."

"Assignment of Error No. II.

"The Court erred in refusing judgment to the plaintiffs as prayed for in their complaint, for the reason that the evidence shows that the conduct of the sale was regular and proper in every respect and fully sufficient to entitle plaintiffs to judgment quieting their title in and to the land described in the complaint."

"Proposition of Law No. I

"To enable an owner to claim the right to redeem property sold for taxes upon the grounds that he was given false or misleading information by the tax collecting officer, it must appear that the fault or mistake was exclusively that of the officer and that there was no mistake or negligence on the part of the owner himself."

"Proposition of Law No. II.

"A litigant is not entitled to equitable relief upon the grounds of misleading statements purported to have been made to him by a tax collecting official when he has knowledge sufficient to inform him of the true situation exclusive of the information purportedly given him by the tax official."

"Proposition of Law No. III.

"When by some reason not within the power or control of the taxing authority a revision downward has occurred in the amount due for the payment of certain taxes, the taxing authorities are not there-

by precluded from proceeding with the sale of the taxed property for the revised sum."

Much is made in the briefs challenging the sufficiency of the evidence to sustain the findings of fact and the general law relative to sales of property where the party entitled to redeem has been given erroneous or incomplete information of the conditions for redemption by public officials. There is no controversy over the facts that we consider lay the predicate for the correct determination of this case. The law applicable and determinative upon these facts relieves us of the necessity of considering plaintiff's Assignment of Error No. I and their supporting Propositions of Law Nos. I and II. Assignment of Error No. II complains of the judgment of the court in not finding that the sale was regular and sufficiently proper in every respect to entitle plaintiffs to judgment. We now consider this assignment and Proposition of Law No. III offered in support thereof.

The resolution of the board of directors of the district as disclosed by its minutes directed the county treasurer to prepare a new tax roll of district taxes then due and unpaid, and to accept and receive from the land owners of the district $1 per acre per year without assessment of penalties and interest until the unpaid district taxes were paid in full. The county treasurer was not authorized to cancel any of the principal owed on account of unpaid taxes or assessments. Opposite the entries for

the years 1931, et seq., in the treasurer's back-tax book (delinquent tax records), there was stamped "Removed from tax roll by order Brd. N.S.I.D." (New State Irrigation District). This entry in the back-tax book was not authorized.

The notice to be given by the treasurer, to the effect that a demand had been made for a treasurer's deed, must follow the statute which provides that: "The date specified in any such notice shall be not less than thirty [30] days from the date of the first publication thereof, and such notice shall state the description of the property and *the amount for which it was sold,* together with the date of such sale and the name of the owner of such property, if known. * * *" Sec. 73-836, A.C.A. 1939. (Emphasis supplied.)

The notices published by the county treasurer on February 25th and March 3rd, 1944, did not state the amount for which the property was *sold,* to wit, $5,076.-19, but erroneously stated as the amount the sum of $606.32. The reason for requiring the notice to specify the amount for which the property was *sold* is readily apparent. The amount for which it was sold represents the amount of the tax due and delinquent plus penalties and interest.

█ A sale by the county treasurer of property for delinquent state and county taxes discharges all liens and assessments including district taxes theretofore levied against the property. Sec. 73-506, A. C. A. 1939. When property vests in a purchaser under a tax sale, prior tax liens of all kinds are discharged. Hallenbeck v. Yuma County, 61 Ariz. 160, 145 P.2d 837, and cases cited therein. See also Allied American Investment Co. v. Pettit, 65 Ariz. 283, 179 P.2d 437. By redeeming for the amount for which sold the taxes will be paid. When a deed issues to the state the taxes are wiped out for the reason that the state takes the property free and clear of all liens; it cannot owe taxes to itself. State v. Maricopa County, 38 Ariz. 347, 300 P. 175. If a deed issues to the holder of a certificate of purchase, he is compelled to pay the amount for which the property was sold plus accruals, in which event the taxes would actually be paid.

█ The amount for which the treasurer sold the certificate of purchase to plaintiffs included only the principal, interest, and penalties for state, county, and school district taxes for the years 1933 to 1937 inclusive. In 1938 when the original sale was made, the district taxes were due and delinquent and were included in the tax sale. Prior to the adoption of the resolution referred to, the district taxes were still both due and delinquent; after the adoption of the resolution the district taxes were due but not delinquent. This statement is made upon the assumption that the board of directors had authority to waive interest and penalties and defer payments of principal. Whether the board had this authority is not a point in issue and is not considered by us. A fortiori if the board did not

have this authority our holding here that the treasurer's notice of application for deed was fatally defective would necessarily follow. We think that it was defective and unauthorized in any event. When it came time to issue a treasurer's deed, the principal of the district taxes was not delinquent, though due, and interest and penalties that had been included in the original sale had been waived. Payment of the principal of the district taxes having been deferred, the treasurer was without authority, under the defective proceedings theretofore conducted, to issue to plaintiff's a treasurer's deed.

The issuance to plaintiffs of the treasurer's deed, if valid, had the effect of discharging the tax lien of the district. Hallenbeck v. Yuma County, supra. At that time the county treasurer was without jurisdiction to proceed; he had no authority to issue a treasurer's deed and thus ipso facto discharge the valid lien of the district for taxes then existing and due but not delinquent. When property is sold for delinquent taxes, such taxes are both due and delinquent. This was the situation that existed when the property was struck off for $5,076.19. Due to the refinancing agreement and the resolution of the board of directors, a new and anomalous situation had arisen. The treasurer could not proceed and comply with the statute, sec. 73-836, supra, requiring him to give notice that demand had been made for a treasurer's deed. If he had complied with the section the notice would have contained the information that the property *sold* for $5,076.19, and that this amount plus interest and penalties would be required to redeem it.

Appellants contend that the controlling statute is sec. 73-817, A. C. A. 1939, authorizing the state to sell any certificate of purchase acquired on the purchase of property struck off to it. This section reads: *"Purchase of property sold to state. —Whenever any real property shall be sold to the state as herein provided, the county treasurer shall sell, assign and deliver the certificate of purchase issued therefor to any person who shall pay to the county treasurer the whole amount then due under such certificate,* including interest, penalties and charges, and who shall in addition pay the whole amount of any subsequent taxes assessed on the real property described therein and the further sum of fifty cents [50¢] for making each such assignment." (Emphasis supplied.)

Appellants insist that when the certificate of purchase was sold to appellants the original principal sum of $4,004.20 was not then due; that there was then due only the sum of $604.82; and that the county treasurer was authorized to advertise only for the amount then due. In this behalf we are cited to Consolidated Motors, Inc., v. Skousen, 56 Ariz. 481, 109 P.2d 41, 46, 132 A.L.R. 1040. in which case the treasurer sold by certificate one lot and before the time for redemption expired one-half of the lot was redeemed by a part owner. In considering the effect of the partial redemption, the court said:

"There remains the question as to whether when the property was sold as a complete lot, the county treasurer had the right to issue a deed to a part thereof. The record shows that before the deed was issued, the legal owner of the south one-half of the lot redeemed that half, as he had a right to do. * * *

"The record shows that James Dean Collins, who redeemed this half of the lot, was entitled to do so under this section, and this being the case, obviously the treasurer could not deed to the purchaser property which had been redeemed. The only thing he could do was to issue a deed to the one-half lot on which no redemption had been made."

The answer to this contention is that sec. 73-836, advising that deed to property *sold* for a certain amount will issue if not redeemed within 30 days, must be read in connection with sec. 73-817, which authorizes the treasurer to sell any certificate of purchase theretofore issued for "the whole amount then due under such certificate." Ordinarily the amount then due under the certificate would be the amount for which it was originally sold including interest, penalties, and charges that have accrued since its sale. The sections are not contradictory, but rather are entirely harmonious.

The legislature in 1931 at the time of the enactment of these sections did not contemplate that a board of directors of an irrigation district would deem it necessary due to economic conditions to remit interest and penalties and defer payment of the principal amount of taxes due the district. Nor did the legislature envision that it would later become necessary to enact laws waiving interest and penalties and deferring payment of taxes owed to the state. Nevertheless, this situation arose. Due to adverse economic conditions over which taxpayers generally had no control, the legislature in 1933, ch. 72, Laws 1933, enacted a law whereby interest and penalties on delinquent taxes due as of June 1, 1933, were waived, and payment of the principal due on delinquent taxes in installments over a period of ten years was provided for. In Biles v. Robey, 43 Ariz. 276, 30 P.2d 841, it was held that the Act of 1933 was not violative of the provisions of art. 9, sec. 7, and art. 2, sec. 13 of the Constitution of Arizona, and sec. 1 of the Fourteenth Amendment to the Federal Constitution.

We hold, therefore, that the board of directors of the district intended to remit all accumulated interest and penalties on the taxes as originally levied and to defer the payment of the principal amount of the taxes. Having taken this action all the proceedings theretofore initiated and conducted by the county treasurer were invalidated. The state's attempt to collect its taxes and those owed to its political subdivisions, by the attempted tax sale, was inextricably involved with its attempt to collect delinquent taxes for the irrigation district. In this case through no fault of the state a precise and legal procedure to compel the payments due it became impossible on the proceed-

ings initiated and attempted to be completed by the county treasurer. We do not intend to infer that the state can be thwarted in the collection of any taxes owed to the state, county, or school districts by the action taken by the board of directors of an irrigation district, but the county treasurer must proceed consistently from the initial step in such a manner that he can comply with all of the provisions of statutes relative to sale of property for nonpayment of taxes. A failure reasonably to comply with these provisions of the law results as a matter of law in a deprivation of property rights and a want of due process. The validation of this deed would deprive the district of its tax lien. The situation would be no different had the defendants purchased the certificate of purchase for the price paid by plaintiff.

For the reasons hereinabove set forth, the judgment is affirmed.

STANFORD, C. J., and UDALL, J., concurring.