275 P.2d 393

LOCAL 266, INTERNATIONAL BROTH-ERHOOD OF ELECTRICAL WORKERS, A. F. of L., an unincorporated association, Lin Boice, President of said Local 266, John O'Malley, Secretary of said Local 266; and A. J. Kuikendall, Al E. Martin, L. H. Mayes, Jr., Al Chlarson, Boyd Mowery, H. H. Wilke, Joe Flower and John Doe I to John Doe I,000, all members of said Local 266, Appellants,

v.

SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT, a political subdivision of the State of Arizona, Appellee.

No. 5621.

Supreme Court of Arizona.

Oct. 18, 1954.

Rehearing Denied Feb. 2, 1955.

Geo. T. Wilson, Minne & Sorenson, Phoenix, for appellants.

Jennings, Strouss, Salmon & Trask, Phoenix, for appellee.

LA PRADE, Justice.

This appeal presents two questions:

1. Can an agricultural improvement district of the State of Arizona, organized by virtue of and pursuant to the provisions of Article 7 of Chapter 75, A.C.A.1939, as amended, legally enter into collective bargaining agreements with its employees regarding wages, hours, and other conditions of employment?

2. May the employees of such a District, by concerted action, strike to enforce the execution of such an agreement?

The appellant, Local 266, International Brotherhood of Electrical Workers, A.F.L., is a labor organization whose membership is comprised exclusively of the employees of the appellee District and Salt River Valley Water Users' Association. The individual appellants are either officers or members of the local. The Union employees of appellee are interested in and affected by the wages, hours and working conditions generally which prevail in the business engaged in by the appellee in the production and distribution of its electrical power.

The Salt River Project Agricultural Improvement and Power District is engaged in the manufacture and development of electric power through hydroelectric power installations located along the Salt River, and is engaged in the distribution of electric power to consumers, principally in the city of Mesa, Arizona, which it serves exclusively, and in other areas of the Salt River Valley, both within and without the corporate limits of incorporated towns, where it has in the neighborhood of 20,000 customers, serving approximately 100,000 private and commercial users in Maricopa and Pinal counties; and is engaged in the construction, extension, operation, control, maintenance and management of the fa-

cilities and works necessary or incidental to the successful operation of said businesses.

For some years prior to November 1, 1949, there existed between the parties hereto (or their predecessors in interest) a collective bargaining agreement which expired on that date. Upon its expiration appellee refused to enter into any agreement covering the terms and conditions of employment, pertaining to the generation and distribution of electrical energy or to the construction or maintenance of facilities necessary therefor, on the ground that as a political subdivision of the State of Arizona, with the rights, privileges, and immunities of a municipal corporation, it could not lawfully so do. Upon the District's refusal to recede from this position, the Union called a strike and placed the usual picket line about the several business establishments of the District.

The District filed its complaint against the Union and caused a temporary restraining order to issue, enjoining the Union from picketing, striking, or causing a slow down. After various court proceedings the parties stipulated all the material facts which they deemed essential to a proper determination of the issues presented by the pleadings, whereupon the superior court granted a judgment and made its temporary restraining order permanent. This appeal followed.

The appellants claim error

"for the reason that the acts and conduct of appellants, which the injunction restrained, were but the lawful exercise of lawful rights for a lawful objective granted to and confirmed to the appellants by the Constitution, statutes and court decisions of the State of Arizona."

In support of this assignment appellants assert (1) that the District is engaged in a purely proprietary business for the benefit of a restricted class of citizens, and is governed generally by the same rules that govern private individuals and corporations engaged in similar business, and (2) that the law under which the District is organized vests in the District full power and authority to negotiate and execute collective bargaining agreements affecting terms and conditions of their employment in the District's business.

Any discussion of the legal status of the District must begin with Section 7 of Article 13 of the Constitution of the State of Arizona, which provides as follows:

"(Improvement districts political subdivisions)—Irrigation, power, electrical, agricultural improvement, drainage, and flood control districts, and tax levying public improvement districts, now or hereafter organized pursuant to law, shall be political subdivisions of the state, and vested with all the rights, privileges and benefits, and entitled to the immunities and exemptions granted municipalities and political subdivisions

under this Constitution or any law of the state or of the United States; but all such districts shall be exempt from the provisions of sections 7 and 8 of article 9 of this constitution."

Appellants contend that the foregoing amendment to the Arizona Constitution did nothing more than to grant the District immunity from taxation. We believe that a plain reading of the constitutional provisions unequivocally defines agricultural improvement districts of the state as political subdivisions of the state and vested with all the rights, privileges and benefits, and entitled to the immunities and exemptions granted municipalities and political subdivisions under the constitution or any law of the state or of the United States. A review of all of the decisions of this court since the adoption of the foregoing constitutional provision establishes that the court has consistently recognized improvement districts organized under Article 7 of Chapter 75, A.C.A.1939, to be political subdivisions of the state, vested with the rights, privileges, and immunities granted municipalities and political subdivisions of the state. See Maricopa County Municipal Water Conservation Dist. No. 1 v. LaPrade, 1935, 45 Ariz. 61, 40 P.2d 94; Hallenbeck et ux. v. Yuma County (Miners & Merchants Bank et al., Intervenors), 1944, 61 Ariz. 160, 145 P.2d 837; Shumway v. Fleishman, 1947, 66 Ariz. 290, 187 P.2d 636; Maricopa County Municipal Water Conservation Dist. No. 1 v. Warford et ux., 1949, 69 Ariz. 1, 206 P.2d 1168; Taylor v. Roosevelt Irr. Dist., 1950, 71 Ariz. 254, 226 P.2d 154, and the rehearing of the same case, 1951, 72 Ariz. 160, 232 P.2d 107; Rubenstein Const. Co. v. Salt River Proj. Agr. Imp. & Power Dist., 1953, 76 Ariz. 401, 265 P.2d 455. Appellants' contention is incorrect.

As a municipal corporation the District asserts the following consequences. The first is that the District, as a political subdivision of the state, is powerless to enter into collective bargaining negotiations with its employees. They state the reason to be that,

"The process of collective bargaining calls upon the governmental agency to delegate to a private agency the authority to operate and control the activities of the governmental agency itself."

The second contention of the District is that since it is powerless to enter into a collective bargaining agreement, a strike by its employees for this purpose should be permanently enjoined as illegal.

To support the assertion that it is powerless to enter into a collective bargaining agreement the District cites us cases from other jurisdictions. The first of these is Mugford v. Mayor and City Council of Baltimore, 1946, 185 Md. 266, 44 A.2d 745, 747, 162 A.L.R. 1101. There a taxpayer enjoined the City of Baltimore and the Municipal Chauffeurs and Garage Employees Union from entering into a collective bargaining agreement. The lower court held

that the city was denied the power to do so by the terms of its charter. This finding was not appealed to the Maryland Court of Appeals and was held to be the rule of the case. The issue considered by the Court of Appeals was whether the City could voluntarily agree to check off union dues upon the request of its employees. A question which is not before this court.

The District refers us to comments made by that court on the findings of the lower court which had not been appealed. The case constitutes no precedent. In its dicta the Maryland court stated,

"To the extent that these matters are covered by the provisions of the City Charter, creating a budgetary system and a civil service, those provisions of law are controlling."

Statutory regulation of employment negates the view that such would be open for contractual negotiations between the employer and employees. If a civil service scheme provides for the regulation of matters normally contained in a collective bargaining agreement the conflicting terms of both could not exist concurrently. The inconsistency would be resolved in favor of the statute. Under these circumstances the power to enter into a collective bargaining agreement would be properly denied as an attempt to subvert legislative direction. A statute must be given effect. Buggeln v. Cameron, 1907, 11 Ariz. 200, 90 P. 324.

In the case before this court we have no legislative expression of public policy to control the terms of employment by a District as existed in the Mugford case, supra.

The District cites us next to City of Springfield v. Clouse, 1947, 356 Mo. 1239, 206 S.W.2d 539, 546. There a declaratory judgment was requested to determine whether the city was empowered to enter into collective bargaining with its employees. The Union argued that the Missouri Constitution, section 29, Article 1, V.A.M.S., which granted employees the right to organize and bargain collectively, applied. The City asserted that this provision was intended to apply only to private employers. An argument not before this court.

The court in the Springfield case found this provision of the constitution not applicable to governmental employees. The court then considered whether the city had the *power* to enter into collective bargaining negotiations with the union, even if not so required by the constitution. The court ruled that while these public employees may organize they may not demand the right to bargain collectively. The court specified the manner in which such a collective bargaining agreement would conflict with the laws of Missouri. Under Missouri Stats. 6678–6688, V.A.M.S., §§ 75.620 to 75.710, all the city officers and employees were covered by civil service. The court indicated the breadth of this personnel system in the following language,

"Thus the General Assembly has provided a single complete all inclusive

scheme for selection, tenure, transfer, promotion and removal, which applies to all city officers and employees under civil service * * *."

An agreement which conflicted with the regulatory power of the city under its civil service system would constitute bargaining away of legislative discretion, as the court there stated, 206 S.W.2d at page 543:

"* * * legislative discretion cannot be lawfully bargained away and no citizen or group of citizens have any right to a contract for any legislation or to prevent legislation."

As we have pointed out the case at bar does not present the issue of the compatibility of a collective bargaining agreement with provisions of a civil service or other statutory scheme of employment. We reserve judgment on this question.

The District next cites Nutter v. City of Santa Monica, 1946, 74 Cal.App.2d 292, 168 P.2d 741, 746. There the Brotherhood of Railway Trainmen brought a mandatory injunction proceeding to require recognition of it, by the city, as collective bargaining agent for the city bus operators. The union argued that section 923 of the California Labor Code, which permitted collective negotiations by agents of the employees, applied to the state. The court held, first, that the Labor Code did not apply to the state, and then discussed whether the city had the power to enter into such collective

bargaining agreements. The court proceeded to show that a collective bargaining agreement would be inconsistent with law. In 1937 the city had adopted a personnel system under legislative authority, Stats. 1935, at page 380. The scope of this system was indicated by the court in the following manner, the scheme,

"* * * provides an exclusive method for the employment, suspension, demotion and dismissal of employees."

The question before this court is far different. Again, we have here no personnel scheme covering matters which would be properly the subject matter of a collective bargaining agreement.

The District cites another case from California, that of State of California v. Brotherhood of Railway Trainmen, 1951, 37 Cal.2d 412, 232 P.2d 857. In this case the question was whether the employees of a state-owned railway were under the provisions of the Federal Railway Labor Act, 45 U.S.C.A. §§ 151, 152, in which case the employees would have had the right to enter into collective bargaining agreements with their employer, or whether such employees of the state were exempt from that Act and subject to the authority of the state civil service commission, in which case the authority of the commission could not be avoided by contract. It was held that the employees were not subject to the federal Act and their employment was to be

regulated by civil service. This case, as those previously discussed, is not in point. At bar there is neither a dispute between federal or state authority nor have we an analogous personnel system present in the above cases.

■ In these cases we fail to find support for the District's contention that it is powerless to enter into a collective bargaining agreement with its employees. Moreover, the powers of this District are less to be determined by case law from other jurisdictions than by the legislative pronouncement which enabled such Districts to exist. The powers of a municipal corporation are those which are given it by the state, McClintock v. City of Phoenix, 1922, 24 Ariz. 155, 207 P. 611; Town of Holbrook v. Nutting, 1941, 57 Ariz. 360, 114 P.2d 226.

■■ We think the question is whether the statutory provisions which define and authorize such districts to exist intend to deny the District the power of entering into such agreements with its employees. The power given to the Directors of the District, who are elected by the landowners within such district, is found in Section 75–714, A.C.A.1939. Those parts of the statute which deal with the power of the District to enter into contractual relations are the following: the District is empowered

"To make and execute all necessary contracts".

and further,

"To make, execute, acknowledge and perform any and all contracts, agreements and obligations as they may deem proper for the interest of the district or to carry out or accomplish any of the purposes authorized or permitted by the provisions of this article * * *."

From the language of these provisions we see no intent to limit the contractual powers of the District as contended. The plain meaning of a statute must be observed. Greenlee County v. Laine, 1919, 20 Ariz. 296, 180 P. 151.

■■ That the District is not specifically given the power to make employment contracts, with the exception of an engineer, tells us little. The authorization to do business in itself implies the necessity of hiring labor. Christie v. Port of Olympia (International Longshoremen's & Warehousemen's Union, Intervenor), 1947, 27 Wash.2d 534, 179 P.2d 294. To construe the statute otherwise would be to defeat the purpose of the legislation and lead to an absurdity which we refuse to do. Mendelsohn v. Superior Court in and for Maricopa County, 1953, 76 Ariz. 163, 261 P.2d 983. Also Section 1–101, A.C.A.1939, declares:

"Statutes shall be liberally construed, to effect their objects and to promote justice."

To say that the District is powerless to enter into one agreement covering the

terms of employment of many of its employees but has the power to enter into approximately 750 separate negotiations would be an incongruity beyond reason. Norwalk Teachers Ass'n v. Board of Education of City of Norwalk, 1951, 138 Conn. 269, 83 A.2d 482, 31 A.L.R.2d 1133.

■ We have held that when a governmental entity functions in a proprietary nature that it should be permitted to perform it in a manner as efficiently as would a private person. Gardner v. Industrial Commission, 1951, 72 Ariz. 274, 233 P.2d 833.

■■ If the board of this District finds that an agreement with its employees is a "necessary contract", "proper for the interest of the district or to carry out or accomplish any of the purposes authorized or permitted by the provisions of this article * * *", then from this language it has the power to make such agreements. The grant of express powers to exist and operate carries with it all the implied powers necessary to effectuate those expressly given. City of Glendale v. White, 1948, 67 Ariz. 231, 194 P.2d 435; Walton et ux. v. City of Phoenix, 1949, 69 Ariz. 26, 208 P.2d 309. This involves no delegation of discretion, the authority to enter into such an agreement or refuse is always in the Board. Norwalk Teachers Ass'n v. Board of Education, supra.

■ That once the District has executed such an agreement it is bound by its terms is no more true of an employment contract than any other contract. That such a municipal corporation may enter into binding legal contracts is beyond dispute. Town of Tempe v. Corbell, 1915, 17 Ariz. 1, 147 P. 745, L.R.A.1915E, 581; Barron G. Collier, Inc. v. Paddock, 1930, 37 Ariz. 194, 291 P. 1000; Tolleson Union High School Dist. v. Kincaid, 1938, 53 Ariz. 60, 85 P.2d 708.

■ The sections of the statute quoted above expressly give the District the power to make necessary contracts. No more necessary contract than that for personal services would appear conceivable, but that is a matter for the Board. For the court to read into these provisions limitations upon the type contracts which the District may find to be necessary would be judicial legislation which we may not do. Reichenberger v. Salt River Project Agricultural Improvement & Power Dist., 1944, 61 Ariz. 465, 150 P.2d 758; Collier v. O'Neil, 1945, 63 Ariz. 320, 162 P.2d 124. The wisdom of a statute is a matter for the legislature, Smith v. Mahoney, Sheriff, 1921, 22 Ariz. 342, 197 P. 704; Francis v. Allen, Superintendent of Highway Patrol, 1939, 54 Ariz. 377, 96 P.2d 277, 126 A.L.R. 190.

We hold that the District herein is not denied the power to enter into collective bargaining agreements with its employees. Norwalk Teachers Ass'n v. Board of Education, supra; Christie v. Port of Olympia, supra; Memphis Power & Light Co. v. City

of Memphis, 1937, 172 Tenn. 346, 112 S.W.2d 817.

 The next question presented by this appeal is whether the employees of the District may engage in strikes. The District asserts that they may not because,

> "Employees in governmental service have an obligation to serve the whole people, whereas, a strike manifests nothing but an intent to prevent the operations of government until the strike demands are satisfied; the fulfillment of strike action would be an abdication of governmental authority to private individuals and private agencies and, therefore, deprive the people of the sovereignty of government which is inherent in only themselves."

This question is closely connected to that of the power of the District to execute a collective bargaining agreement previously discussed. If the power to enter a collective bargaining agreement is denied to a municipal corporation, a strike by its employees for such purpose would be illegal as contrary to the policy of the law. Here we have found no such statutory restriction on the District's powers. Consequently the question is this: though the purpose, a collective bargaining agreement, is legal, may it be said that the strike, as a method of obtaining such an agreement, is denied to these employees?

The District cites us the case of City of Los Angeles v. Los Angeles Bldg. & Const. Trades Council, 1949, 94 Cal.App.2d 36, 210 P.2d 305, 311. There the city undertook to expand the water and electric facilities serving its inhabitants. To do so the city negotiated with contractors to perform some of the work. Many employees of such contractors were members of the Trade Council. The city also assigned some of its civil service employees on the expansion project. The Trade Council requested that such city employees either become members of the Trade Council or be withdrawn from the job. The city, in substance, refused and a strike ensued. The court ruled that this strike was for an illegal purpose and enjoined the Trade Council. The illegality of this strike was found in the civil service status of the employees involved, and the court stated:

> "From what has already been said, we think it is self-evident that defendants may not, consistently with the public policy expressed in the Los Angeles City Charter, lawfully either strike or picket for the purpose of enforcing demands as to conditions of employment in respect to which neither the city nor the Department of Water and Power is obligated to bargain collectively."

The statute does not deprive the District of the power to enter into collective bargaining agreements and we find no grounds to imply a public policy against peaceful striking and picketing for this legal purpose. We have said that statements of pub-

lic policy must be made by the people through the legislature, State ex rel. Mullen, State Land Com'r v. Hedrick, 1938, 51 Ariz. 180, 75 P.2d 366; Harrison v. Laveen, 1948, 67 Ariz. 337, 196 P.2d 456; Ray et ux. v. Tucson Medical Center, 1951, 72 Ariz. 22, 230 P.2d 220.

Moreover, the court in the Los Angeles case, supra [94 Cal.App.2d 36, 210 P.2d 313], stated that in view of the public regulation of employment,

"Fair treatment for public employees does not require legal protection for the concerted labor action generally, as in the case of private employment, for such treatment is, in the public field, compelled to a considerable extent by law."

This consideration cannot be said to exist in the case at bar.

The District also cites us the case of City of Detroit v. Division 26 of Amalgamated Ass'n of Street, Electric Railway & Motor Coach Employees of America, 1952, 332 Mich. 237, 51 N.W.2d 228. That case discussed the constitutionality of the Hutchinson Act, P.A.1947, No. 336, C.L.1948, §§ 423.201–423.207, Stat.Ann. sec. 17.455(1)–17.455(7), an Act which expressly denied to public employees the right of striking. There is no comparable statute in Arizona declaring such to be the public policy of this State. We fail to see the relevancy of this case, or that of City of Cleveland v. Division 268 of Amalgamated Ass'n of Street, Electric Railway & Motor Coach Employees of America, Ohio Com.Pl.1949, 90 N.E.2d 711, where a similar statute, the Ferguson Act, General Code, §§ 17–7 to 17–12, was in force.

In the absence of such a statute in this state may these employees be denied the right to strike on the general grounds of public necessity? The District refers us to a letter written by the late President Roosevelt to the president of the National Federation of Federal Employees which seems to indicate that public employees should be denied the right to strike due to the vital necessity of the continuity in governmental operations to the people of the country. As quoted in Rhyne, Labor Unions and Municipal Employee Law (1946), at page 192, the letter reads in part:

"Upon employees in the federal service rests the obligation to serve the whole people, whose interests and welfare require orderliness and continuity in the conduct of government activities * * *. Such action looking toward the paralysis of government by those who have sworn to support it is unthinkable and intolerable."

The court, in Norwalk Teachers Ass'n v. Board of Education, supra [138 Conn. 269, 83 A.2d 485], in denying the employees the right to strike, termed them,

"Those people are agents of the government. They exercise some part of the sovereignty entrusted to it."

Even assuming that this court could enunciate the public policy of Arizona in the

absence of statutory direction, can it be said that the employees of this District are the type of persons to whom this language refers? These employees cannot be characterized as "agents of the government", nor can they be said to have "sworn to support" the District. The nature of the District's operations and purposes are not designed to "serve the whole people" as we commonly conceive the role of government.

· The court in Christie v. Port of Olympia, supra [27 Wash.2d 534, 179 P.2d 301], was presented with a similar question concerning the employees of the state-owned Port of Olympia. The court there stated,

" ' "In maintaining a fire department, a city is exercising a governmental function, and a fireman, instead of being considered as an ordinary employee of the city, 'is in fact a public officer and engaged in a governmental duty.' " ' "

"We think, however, that no one will contend that a longshoreman engaged in loading or unloading a vessel—here today and gone tomorrow—is a public officer."

To say that the employees of the District herein are actually "public employees" is not the province of this court but a matter for the legislature. State ex rel. Mullen v. Hedrick, supra; Harrison v. Laveen, supra; Ray v. Tucson Medical Center, supra.

As to the nature and functions of the District an examination of its organization is necessary to understand its purposes. The District here is organized pursuant to sections 75–701 to 75–748, A.C.A. 1939. Section 75–701 provides that five or more agricultural landowners whose lands may be improved by irrigation and drainage works may propose the organization of such a district. The purpose of these Districts is varied, they may secure, store or distribute irrigation waters. They may also provide electric power for the " * * * use of the owners or occupants of such land * * * " or they may sell such power or surplus water to the general public to " * * * reduce the cost of irrigation, drainage and power to the owners of the lands in said district * * * ". Section 75–701 states the qualifications necessary to vote on the question of the original organization of such districts and on subsequent matters. That section requires each voter to own at least one acre of land within the boundaries of the proposed district. The number of votes each owner may cast may vary with the total acreage held, or each owner of one or more acres may have but one vote, as the District may decide.

This court has had occasion to discuss the nature of such Districts both before and after the Constitutional Amendment, supra, which designated them political subdivisions of the state. In Day v. Buckeye Water etc. District, 1925, 28 Ariz. 466, 237 P. 636, at page 638, we stated,

"On the other hand, irrigation districts and similar public corporations,

while in some senses subdivisions of the state, are in very different class. Their function is purely business and economic, and not political and governmental. They are formed in each case by the direct act of those whose business and property will be affected, and for the express purpose of engaging in some form of business, and not of government."

Following the constitutional amendment in which the status of the District became fixed, we again were presented with an opportunity to discuss the nature of such organizations. In Taylor v. Roosevelt Irrigation District, supra, we said, 226 P.2d at page 156:

"We are of the opinion that the primary functions of these irrigation districts have not been changed by the Constitutional Amendment, supra, and in the conduct of their ordinary business, they are not exercising governmental or political prerogatives as they are not operated for the direct benefit of the general public but only of those inhabitants of the district itself. If, as argued by the appellee, such functions were classed as governmental because of the benefit rendered the general public ultimately, then indeed there could be no such thing as a proprietary function of a public body, as the general public will inevitably derive some benefit from any such activities."

On rehearing of this case, supra, 72 Ariz. 160, 232 P.2d 107, 109, this court made the additional statement:

"The actual operation and functioning of the district after the adoption of the constitutional amendment, supra, was in the same factual manner as at the time of the Day case. The adoption of the constitutional amendment in no sense altered the inherent characteristics of the district."

and further:

" * * * we experience no difficulty in determining that the appellee corporation is in essence a business corporation and that such attributes of sovereignty as have been conferred upon it are only incidental and were conferred for the purpose of better enabling it to function and accomplish the business and economic purposes for which it was organized."

The District's operations are conducted to enable it to "function and accomplish the business and economic purposes for which it was organized".

■■■ Such construction of the status of this District under its statutory authorization is compelling. We have ruled that unreversed statutory construction is to be held part of the statute as if originally so written. Steward v. Industrial Commission, 1949, 69 Ariz. 159, 211 P.2d 217.

■■■ Yet another distinction between the District and other municipal corpora-

tions is to be noted. Most municipal corporations are owned by the public and managed by public officials. It might be said that a strike by the employees of such municipal corporations would constitute a strike against the public. Such is not the case here. Public employment means employment by some branch of government or body politic specially serving the needs of the general public. It cannot be said that the District's employees are paid from the public treasury as are employees of the public. The public does not own the District. A governmental entity such as a city or town does not manage or benefit from the profits of this District. Instead the owners are private landholders. The profits from the sale of electricity are used to defray the expense in irrigating these private lands for personal profit. The public interest is merely that of consumers of its product, for which they pay. In view of this additional factual distinction between the usual municipal corporation and the District it cannot be said that a strike here is a strike against the public. The District does not function to "serve the whole people" but rather the District operates for the benefit of these "inhabitants of the district" who are private owners.

Without statutory direction it is difficult to assert that the public necessity is so obvious that this court may rule that the public policy of this state unequivocally denies these employees the right to strike. Moreover, as we have stated before, public policy is to be created by the legislature, not the courts. Smith v. Mahoney, supra; Francis v. Allen, supra.

The business purpose of this District implies possible competitors in the economy over which the District would be given a discriminatory advantage if its employees may not use all usual techniques in labor disputes. We have expressed our reluctance to allow discrimination to occur. Sumid v. City of Prescott, 1929, 27 Ariz. 111, 230 P. 1103.

We find no indication from either the cases or statutes which indicate that the employees of this District may not engage in a peaceful strike. This is not to imply that such social friction is desirable, only that the District, as a business entity, is subject to the hazards of the economy as are its possible competitors.

Our judgment extends only to this governmental unit. We make no decision as to the status and rights of other municipal corporations.

The two questions presented at the outset of this opinion are answered in the affirmative.

The judgment of the lower court is reversed, with instructions to make and enter an order dismissing the complaint and dissolving the permanent injunction theretofore granted.

PHELPS, C. J., and STANFORD, UDALL and WINDES, JJ., concur.