**VIRGIN ISLANDS PORT AUTHORITY, Plaintiff**

**v.**

**SIU DE PUERTO RICO, et al., Defendants**

Civil No. 1-1973

District Court of the Virgin Islands

Div. of St. Croix

February 8, 1973

RONALD H. TONKIN, Attorney General, St. Thomas, V.I.,
*for plaintiff*

ROBERT H. RUSKIN, ESQ., Christiansted, St. Croix, V.I.,
*for defendants*

YOUNG, *Judge*

MEMORANDUM OPINION AND PERMANENT INJUNCTION

On January 10, 1973, this Court granted a preliminary injunction against the labor union SIU de Puerto Rico ("the union"). The union represents employees of the Virgin Islands Port Authority ("the Authority"). Those employees of the Authority involved in providing pilot services to ships visiting the ports of St. Thomas and St. Croix commenced a strike or work stoppage upon the termination of their contract. The strike, however, was enjoined at its inception by a temporary restraining order, which subsequently was converted to a preliminary injunction. This decision is being made after a final evidentiary hearing and argument pertinent to making the preliminary injunction permanent.

Employees of the Government of the Virgin Islands or any agency thereof are statutorily forbidden to strike. 24 V.I.C. § 64(b). At the time of the hearing on the preliminary injunction, one of the principal issues was whether the Authority was a "governmental agency", and hence would not be an "employer" under § 2(2) of the Labor Management Relations Act, 29 U.S.C. § 152(2). The Court examined the statutory structure of the Authority, 29 V.I.C. Ch. 10, in light of the tests set forth in NLRB v. Natural Gas Utility District, 402 U.S. 600 (1971), and concluded that it was exempt from the LMRA as a bona fide government agency or instrumentality. Application of the local no-strike statute would therefore be appropriate and the Court granted the preliminary injunction, rul-

ing that it would automatically become permanent within 20 days unless the union applied for further argument and/or an evidentiary hearing. This application has been made by the union and the matter is again before me.

■ At this time my earlier reasoning regarding the paternity of the Government to the Authority is not being challenged and the union evidently concedes the governmental status of the Authority.[1] Instead, the union now advances a new argument and urges that legislation establishing the Authority contains an implicit authorization for its workers to strike as they would be permitted to do against a private employer. For the reasons set forth below, I find no such authorization in the Port Authority Act ("the Act"). The preliminary injunction will therefore be made permanent.

■ As the starting point for examination of this issue, it is clear that the general legislative policy of the Virgin Islands is against strikes by public employees. 24 V.I.C. § 64(b) was amended as recently as 1970 to provide as follows:

> Employees of the Government of the Virgin Islands or any agency thereof shall not have the right to strike or engage in any work stoppage whatsoever. . . .

In addition to this statutory provision, the common law was generally understood as prohibiting strikes against the government.[2] See, e.g., Los Angeles Met. Tr. Auth. v. Railroad Trainmen, 355 P.2d 905, 906 (Calif. 1960); Norwalk Teachers' Association v. Board of Education, 83 A.2d 482 (Conn. 1951); 31 A.L.R.2d 1142, 1159–61 (1953).

---

[1] If this conclusion were challenged now, I would nonetheless adhere to my original finding.

[2] A contract between the union and the Authority, which included a no-strike clause covering the life of the contract, might be taken as implying that there was a right to strike at the expiration thereof. Even if this is the implication, however, it is not relevant here. A contract cannot override conflicting provisions of the general law.

Such a strike would be to some extent contrary to the notion of government, and hence, evidently, the common law prohibition. A second justification for the rule is more practical in orientation and perhaps more persuasive. A particular activity is usually undertaken by the government precisely because it is critically important to a large segment of the public, and the public is therefore especially vulnerable to "blackmail" strikes by workers in this field.[3]

The union does not dispute that this is the general rule, but instead urges that the Port Authority legislation contains an implicit authorization for its workers to strike. That legislation is indeed unique in a number of respects. The Authority is set up as a nearly autonomous body, and is empowered to manage its own affairs free of routine government supervision. Among its powers are those to contract, hire personnel, and do "all acts or things necessary or desirable" to effectuate its purposes. See, e.g., 29 V.I.C. § 543. The union argues, and the Government does not dispute, that this grant is broad enough to include the power to collectively bargain with the union and sign an employment contract with its members. The union then points to another section of the Act, which provides that the Authority is to be operated in accordance with the provisions of its own chapter of the Code, and that inconsistent general laws of the Virgin Islands are not to be held applicable to the Authority unless so specifically provided.[4] The no-strike law is couched in

---

[3] I mention this only as one possible justification for the general common law rule and intend no disparagement thereby to the motivations of the union in the present case.

[4] 29 V.I.C. § 578, which provides as follows:

Insofar as the provisions of this chapter are inconsistent with the provisions of any other Act of the Legislature of the Virgin Islands, the provisions of this chapter shall be controlling and no law heretofore or hereafter passed governing the administration of the Government of the Virgin Islands or any parts, office, bureaus, departments, commissions,

general language and does not refer to the Authority in terms. From this the union would conclude that the no-strike law does not apply to Authority workers, since it would be inconsistent with the Authority's power to enter into collective bargaining and the union's correlative right to strike in support of its bargaining stance.

██ ██ The flaw in this argument comes at the end. It is only *inconsistent* general laws which are inapplicable to the Authority and there is no inconsistency in permitting the union to bargain collectively but prohibiting it from striking in support of its demands. The law thus contemplates that, so far as the union represents public employees, it must bargain with lighter weapons. In this situation the union must rely on such techniques as making suggestions of mutual benefit, mustering of public opinion and, ultimately, the threat that an inadequate wage will cause experienced workers to leave the Authority's employ altogether. In other words, there is no correlative right to strike which flows from an admitted right to bargain. The Supreme Court recognized the distinction in Local 232 v. Wisconsin Empl. Relats. Bd., 336 U.S. 245 (1949):

> The right to strike, because of its more serious impact upon the public interest, is more vulnerable to regulation than the right to organize and select representatives for lawful purposes of collective bargaining which this Court has characterized as a "fundamental right."

Moreover, it is also evident that the Virgin Islands Legislature was aware of, and relied upon, the distinction between collective bargaining and strikes. *All* public employees are granted the right to negotiate collectively about their terms of employment, by 24 V.I.C. § 64(c),

---

municipalities, branches, agents, officers, or employees thereof shall be construed to apply to the Authority unless so specifically provided but the affairs and business of the Authority shall be administered as provided herein.

329

while another subsection of this law prohibits the same employees from striking. It cannot be claimed that the former provision undercuts the no-strike law altogether. The two provisions are therefore consistent with one another, and hence both will be applicable to employees of the Port Authority.

In urging the Court to take a contrary position the union relies heavily on two cases. I believe, however, that both are distinguishable on their facts. In Los Angeles Metro. Transit Auth. v. Railroad Trainmen, 355 P.2d 905 (Calif. 1960), the California Supreme Court found a statutory authorization for the employees of a transportation system to strike. The statute there, however, was considerably more amenable to such interpretation than is ours. The statute authorized those workers to engage in "concerted activities for the purpose of collective bargaining or other mutual aid or protection. . . ." Prior court decisions had construed this phrase to include such activity as strikes and picketing. In the Virgin Islands this identical language is used in 24 V.I.C. § 64(a), referring to workers in private firms, but is conspicuously omitted from the following subsections dealing with the rights of public employees. Moreover, the lengthy dissent in that case somewhat reduces its persuasive value. Local 266 v. Salt River Project Agr. Imp. & P. Dist., 275 P.2d 393 (Ariz. 1954), is also distinguishable on two grounds. Arizona had no statute prohibiting strikes by public employees, so the court there required a strong showing of "public necessity" before it would forbid a work stoppage. Id. at 401, 403. But in the Virgin Islands, as we have seen, we have a statute written in comprehensive terms. The Arizona court also concluded that the Salt River Power District was not truly "governmental", at least for purposes of labor policy, since its operation produced a profit for certain individual landowners rather than benefiting

330

the whole people equally. Id. at 401–03. The governmental nature of the Port Authority is considerably clearer. It is evidently intended to be self-sustaining but otherwise non-profit, see 29 V.I.C. § 543(12), and its facilities encourage commerce to the manifest benefit of all inhabitants of the Virgin Islands.

In reaching these conclusions, and in issuing a permanent injunction, I am aware of the uncomfortable position in which the union members find themselves. While they are forbidden to strike, they are also denied the Civil Service benefits which aid most public employees in a corresponding manner.[5] This situation is, I think, not a common one. Many cases cite the alternative of Civil Service supervision as one reason for the propriety of laws forbidding public strikes. See, e.g., Los Angeles v. Los Angeles Bldg. & C. Tr. Council, 210 P.2d 305 (Calif. D.Ct. App. 1949). The contrary arrangement provided for here is clearly within the competence of the Legislature. Nonetheless, since there appears some danger of injustice being done, I might convey a suggestion to those officials responsible for negotiating a new contract on behalf of the Authority. Where employees are working for an autonomous agency which is exempt from the career service, I think both sides might do well to utilize nonbinding arbitration during their contract negotiations. Mediation and fact-finding by neutral parties appear to be the most promising paths. Indeed, many jurisdictions provide for them by statute in the case of public labor disputes. See Am.Jur.2d, Labor § 1196.

---

[5] The exemption of Authority employees from the career service is not challenged here. For legislation indicating that they are thus exempt, see Act of Dec. 24, 1968, No. 2375, § 3(c), Sess. L. 1968, Pt. II, p. 408, *printed in* annotations to 29 V.I.C. § 531. This provides that Authority employees should, so far as practical, receive the same benefits as those given the workers at the Water and Power Authority. Under 3 V.I.C. § 451a(b) (7)(ii), Water and Power Authority workers are exempt from the career service.

## PERMANENT INJUNCTION

For the reasons set forth above, the preliminary injunction issued on January 10, 1972 is hereby made permanent.