VIRGIN ISLANDS PORT AUTHORITY, Appellee

v.

SIU DE PUERTO RICO, CARIBE & LATINOAMERICA, affiliated to the SEAFARERS INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO and GRANVILLE HENDRINGTON, Union Delegate for SIU DE PUERTO RICO, Appellants

No. 73-1459

United States Court of Appeals

Third Circuit

Argued December 3, 1973

Filed March 28, 1974

ROBERT H. RUSKIN, ESQ., St. Croix, V.I., *for appellants*

HENRY L. FEUERZEIG, ESQ., Assistant Attorney General, St. Thomas, V.I., *for appellee*

Before SEITZ, *Chief Judge*, GIBBONS and WEIS, *Circuit Judges*

OPINION OF THE COURT

SEITZ, *Chief Judge*

Defendant, S. I. U. de Puerto Rico ("the Union"), the exclusive bargaining representative for the employees of plaintiff, the Virgin Islands Port Authority ("the Authority"), appeals from orders of the district court for the Virgin Islands enjoining the Port Authority's employees from striking and denying the Union's motion for re-

consideration.[1] The Authority, created by the "Port Authority Act," 29 V.I.C. Chapter 10, is a government corporation. While not expressly authorized by the Port Authority Act to engage in collective bargaining, the Authority has negotiated bargaining agreements with its employees.

At the expiration of the agreement covering 1972, the Authority's marine operations employees commenced a strike in support of their economic demands against the Authority. Maintaining that the strike was prohibited by 24 V.I.C. § 64(b) (1970), the Authority sought a temporary restraining order and preliminary and permanent injunctions. The District Court agreed that Section 64(b) proscribed this strike and granted the relief requested by the Authority. The Union appeals.

Section 64(b), in relevant part, provides:

> Employees of the Government of the Virgin Islands or any agency thereof shall not have the right to strike or engage in any work stoppage whatsoever . . . .

24 V.I.C. § 64(b) (1970).

Since the Authority is expressly made a government instrumentality, Section 64(b) would seem to apply to the Authority's employees.[2] While there is no express provision in the Act granting the Authority's employees the right to strike, the Union contends that the Port Authority Act implicitly excepts Authority employees from the operation of Section 64(b).

The Union asserts that the Virgin Islands legislature granted the Authority complete autonomy in its labor relations, thereby evidencing an intention that the Author-

---

[1] Reported below at 354 F.Supp. 312 (D.V.I. 1973).

[2] At the preliminary injunction stage, the Union argued that the employees of the Authority were not government employees and were therefore not subject to the proscription of Section 64(b). The district court found that the Authority was a "political subdivision" and that its employees were accordingly government employees. 354 F.Supp. 312, 312–13 (D.V.I. 1973). The Union does not challenge that finding here.

ity and its employees conduct those relations as would a privately owned corporation and its employees. In support of its contention, the Union relies on the Authority's power to enter collective bargaining agreements with its employees and the exclusion of Authority employees from civil service protection. Neither point requires the inference that the legislature intended to exempt the Authority employees from Section 64(b).

■ Although the Authority is not expressly given the power to enter collective bargaining agreements, this power may be inferred from the Authority's powers to contract and to hire labor. This, however, does not place the Authority's employees on different footing from other government employees; the Virgin Islands Code recognizes the rights of all government employees to collectively negotiate with the government, 24 V.I.C. § 64(c) (1970), and directs government agencies to recognize employee organizations for the purpose of collectively bargaining and contracting with government employees. 24 V.I.C. § 64(d) (1970).[3]

■■ Thus, the only statutory provision from which Authority autonomy in labor relations may be inferred is the provision placing the Authority's employees outside the Personnel Merit System which grants certain protection to most government employees.[4] Not all other government employees enjoy the Merit System's protections, however, and the premise that the legislature did not deem it prac-

[3] In determining the powers granted to it, the Authority is authorized to make reference to other Virgin Islands legislation by 29 V.I.C. § 543(17) (1973 Supp.), which provides:

[The Authority is granted the power] to do all things necessary or desirable to carry out the powers granted to it by this chapter or by any other Act of the Legislature of the Virgin Islands.

[4] See Act of Dec. 24, 1968, No. 2375, § 3(c), Sess. L. 1968, Pt. II, printed in the annotations to 29 V.I.C. § 543 (1973 Supp.). This provides that Port Authority employees should, so far as practical, receive the same benefits as those given the workers at the Water and Power Authority. Under 3 V.I.C. § 451a(c)(7)(ii) (1967), Water and Power Authority workers are exempted from the career service.

tical to afford those protections to all government employees does not mandate a conclusion that the legislature did intend to give excluded employees the right to strike. We conclude, therefore, that the Port Authority Act does not exempt Authority employees from Section 64(b)'s prohibition of strikes by government employees.

We note that Section 64(b) was passed after the Port Authority Act,[5] and had the legislature intended to exempt Authority employees from the clear terms of Section 64 (b), it easily could have done so. The Union asserts that this was unnecessary because the Port Authority Act provides that its provisions control when inconsistent with other Virgin Islands statutes.[6] Nothing in the Port Authority Act, however, is necessarily inconsistent with Section 64(b).

As the Virgin Islands Code clearly indicates for other government employees, the right to bargain is not inconsistent with the prohibition of strikes. While 24 V.I.C. § 64(c) gives public employees the right to collectively negotiate with the government, the immediately preceding section prohibits strikes by employees of the Virgin Islands. 24 V.I.C. § 64(b). See also Local 232, U.A.W. v. Wisconsin Employment Relations Board, 336 U.S. 245, 259 (1948); United Federation of Postal Clerks v. Blount, 325 F.Supp. 879, 883–84 (D. D.C.) aff'd. 404 U.S. 802 (1971). Nor is exemption from civil service protections inconsistent with proscription of strikes. In fact, many cases have upheld an antistrike rule despite the absence of a civil service scheme. See, e.g., Kirker v. Moore, 308 F.Supp. 615, 624 (S.D. W.Va. 1970).

---

[5] The portion of Section 64(b) which prohibits strikes was enacted in 1970. The legislation creating the Port Authority and relied upon by the Union as the basis for their claim of a right to strike was originally enacted in 1968.

[6] "Insofar as the provisions of this Chapter are inconsistent with the provisions of any other Act of the Legislature of the Virgin Islands, the provisions of this Chapter shall be controlling . . . ." 29 V.I.C. § 578 (1973 Supp.).

■ The Union nonetheless argues that the right to strike was conferred on Authority employees by negative implication; since the bargaining agreement between the Union and the Authority expressly prohibits strikes during the life of the agreement, it gave the employees, the Union contends, the right to strike upon expiration of the agreement. Even if we were to concede that this was the intent of the contracting parties, we would not enforce this part of the bargain. Having found that the law of the Virgin Islands forbids strikes by government employees, we would find that the right to strike contemplated in the collective bargaining agreement is unenforceable by operation of the express statutory prohibition of strikes contained in Section 64(b). The Union and the Authority could not by private agreement waive the illegality of such strikes and evade the express legislative prohibition of strikes contained in Section 64(b).

■ Finally, the Union contends that the district court found only that the strike was within the express statutory prohibition of Section 64(b) and did not rule on the merits of the Authority's application for an injunction. This contention rests on the Union's further claim that in granting the injunction the court made no mention of irreparable harm to the Authority. In granting the temporary restraining order, the district court did find that the Authority would suffer irreparable harm if relief were denied. The Union has not shown that this finding was clearly erroneous nor did it introduce any evidence to cast doubt on this finding or to show any changed circumstances at the time the permanent injunction was granted. The district court did not abuse its discretion in granting the permanent injunction without further reference to the harm to plaintiff likely to result from denial of injunctive relief.

The judgment of the district court will be affirmed.