**DUNCAN M. MANNING, Assistant Attorney General, Plaintiff**
**v.**

**DONALD M. BOUTON, Acting Attorney General for the
Virgin Islands, and the GOVERNMENT OF THE VIRGIN
ISLANDS, Defendants**

Civil No. 81/108

District Court of the Virgin Islands

Div. of St. Thomas and St. John

May 12, 1981

DUNCAN MANNING, ESQ., c/o IVE ARLINGTON SWAN, ESQ., St. Thomas, V.I., *pro se*

WILLIAM C. MURRAY, JR., ESQ., Assistant Attorney General (Department of Law), St. Thomas, V.I., *for defendants*

BRODERICK, *Judge*

## MEMORANDUM

On March 10, 1981, plaintiff Duncan M. Manning, Esquire (hereinafter "Mr. Manning") filed a complaint against defendants Donald Bouton, Esquire, Acting Attorney General of the Virgin Islands (hereinafter "Mr. Bouton") and the Government of the Virgin Islands. The complaint was titled "Action for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction." Accompanying the complaint were numerous exhibits and a motion for a temporary restraining order pursuant to Fed. R. Civ. P. 65. Defendants responded to the complaint by filing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

A hearing was held on March 18, 1981. Mr. Manning represented himself and defendants were represented by counsel. The bulk of the hearing was devoted to discussion of defendants' motion to dismiss. However, in view of the fact that matters outside the pleadings were presented and considered by the Court, the motion was treated as one for summary judgment. In accordance with Rule 12(b) and Rule 56, both parties were given an opportunity to present additional materials and argument in connection with the summary judgment motion. Because the complaint sought injunctive relief and the matter first came to the court on a motion for a temporary restraining order, the court set a hearing for March 20, 1981, the next day, and gave the parties the option, however, of requesting additional time.

The second hearing was held on March 20, 1981. Both parties presented affidavits in support of their respective positions. Both parties were given an opportunity to argue. Both parties declined the offer of additional time to present additional materials.

On March 20, 1981, after the hearing, the Court entered summary judgment in favor of defendants and against Mr. Manning. This Memorandum sets forth the Court's reasons for entering the order of summary judgment.

The parties are in agreement as to all the material facts in this case. Thus, there is no genuine issue as to any material fact. These facts can be set forth briefly. Mr. Manning is an attorney who was hired by the Government as an Assistant Attorney General approximately seven months before he instituted this action. When Mr. Manning was hired, Mr. Ive Arlington Swan was the Attorney General, and Mr. Manning and Mr. Swan entered into an oral agreement whereby Mr. Manning was given permission to continue the private practice of law in order to terminate outstanding matters with his clients. Mr. Manning never joined or belonged to any union representing Virgin Islands Assistant Attorneys General. On December 30, 1980, Mr. Swan left the Attorney General's office. By letter dated February 20, 1981, Mr. Bouton, the Acting Attorney General, dismissed Mr. Manning from his position as an Assistant Attorney General. This letter stated:

> It has come to my attention that you have been continuously engaged in the private practice of law, in violation of the provisions of Section 117, Title 3, of the Virgin Islands Code, over the past six months while being employed on the staff of the Department of Law as an Assistant Attorney General.
>
> In addition to the foregoing, you have not been rendering satisfactory legal services to the Government of the Virgin Islands, either with regard to quality or quantity.
>
> I am therefore terminating your probationary appointment effective March 10, 1981.

Mr. Manning was not employed by the Government for any specific period of time. In his complaint, Mr. Manning alleged that he has been irreparably injured by the termination in that upon being hired by the Government, he dissolved a lucrative law practice in New York, entered into a long term lease for a residence in the Virgin Islands, and made extensive renovations on said residence. Mr. Manning further alleged that he has no other employment and is unable to engage in the private practice of law in the Virgin Islands.

On December 9, 1980, the Governor of the Virgin Islands signed into law an act[1] approved one week earlier by the Virgin Islands Legislature. The Act states:

---
[1] Act No. 4506.

Notwithstanding any provision of law to the contrary, the conditions of employment of all Assistant Attorneys General and all other attorneys employed by and performing legal services for the Executive Branch of Government of the Virgin Islands, shall be governed through September 30, 1982, by the terms of the Agreement between the Department of Law, Government of the Virgin Islands, and the United Industrial Workers of North America, a copy of which Agreement is appended hereto . . . .

Among the provisions of the Collective Bargaining Agreement are:

*Section 1:* The Employer recognizes the Union as the sole and exclusive bargaining representative for all employees covered by this Agreement . . . as follows:

—*included:* All Assistant Attorneys General and all other attorneys employed by and performing legal services for the Executive Branch of the Government of the Virgin Islands;

—*excluded:* The Attorney General and attorneys appointed to the Governor's personal staff.

*Section 34: No Individual Contracts.* There shall be no individual contracts concerning terms and conditions of employment between Employer and an Employee covered by this Agreement.

*Section 35(b): Resignations, Terminations, Notice.*

(b) It shall be the policy of the Employer to base the termination of an Employee upon cause. If an Employee is to be terminated, the Employer shall give such Employee a minimum of ten working days advance notice . . . .

*Section 45: Management Prerogatives.* The Employer . . . shall have the right to . . . discharge any Employee for just cause.

*Section 19: Grievance Defined.* For the purposes of this Agreement, a grievance is defined as a complaint, dispute or controversy between the parties as to the interpretation, application or performance of this agreement.

*Section 20: Exclusive Procedure.* The following procedure . . . shall be the exclusive means of settlement of all grievances arising under this Agreement.

At no time did Mr. Manning ever file a grievance pursuant to the terms of the Collective Bargaining Agreement. Mr. Manning contends that since he is not and never has been a member of the union, he cannot be bound by the terms of the Collective Bargaining Agreement. He also contends his oral agreement with the former

461

Attorney General controls his employment relationship. Mr. Manning takes issue with the facts alleged by the Government discharge.[2] The Government contends that the Collective Bargaining Agreement is binding on all Assistant Attorneys General, whether they be union members or not, and that the terms of the Collective Bargaining Agreement preclude the issuance of the injunction requested by Mr. Manning because he is bound by the Collective Bargaining Agreement and must submit his grievance pursuant to grievance-arbitration procedure contained therein.

Were the parties in this case in the private sector of the economy and engaging in such business as to bring them within the definition of "commerce" for the purposes of the Labor Management Relations Act, 1947 (hereinafter "LMRA") 29 U.S.C. § 141 et seq., the law is clear that a nonunion member of the bargaining unit such as Mr. Manning would be bound by the terms of the Collective Bargaining Agreement. This concept is implicit in § 9(a) LMRA, 29 U.S.C. § 159(a), which provides that representatives chosen by the majority of employees in a particular unit "shall be the exclusive representatives of all employees in such unit for the purposes of collective bargaining in respect to rates of pay . . . . or other conditions of employment." The binding nature of this exclusive power has been recognized by the United States Supreme Court:

> The (national labor) policy therefore extinguishes the individual employee's power to order his own relations with his employer and creates a power vested in the chosen representative to act in the interests of all employees. "Congress has seen fit to clothe the bargaining representative with powers comparable to those possessed by a legislative body both to create and restrict the rights of those whom it represents . . . ." Steele v. Louisville & N.R. Co., 323 U.S. 192, 202 (1944) . . . . The employee may disagree with many of the union decisions but is bound by them. NLRB v. Allis Chalmers Mfg. Co., 388 U.S. 175, 180 (1966). See also NLRB v. Massachusetts Machine and Stamping Co., 578 F.2d 15, 19 (1st Cir. 1978).

Furthermore, where the national labor policy applies there would be no question that the court would uphold section 34 of the Collec-

---

[2] The government has not taken issue with Mr. Manning's claim of an oral agreement, nor has it presented evidence concerning its factual allegations for his dismissal. The fact that there are genuine issues of fact as to such matters does not prevent the entry of summary judgment because the genuine issues of fact as to such matters are not material to the issues decided in this summary judgment procedure based upon the Collective Bargaining Agreement.

tive Bargaining Agreement, which forbids individual contracts. Although there is some room for individual contracts within the scope of the LMRA, they may not be "used to forestall bargaining or to limit or condition the terms of the collective agreement." J. I. Case Co. v. NLRB, 321 U.S. 332, 337 (1943).[3] The scope and range of a private contract concerning terms and conditions of employment are controlled by the collective bargaining agreement: "The very purpose of providing by statute for the collective agreement is to supersede the terms of separate agreements of employees with terms which reflect the strength and bargaining power and serve the welfare of the group." Id. at 338.

■ There is also no doubt that where the federal labor policy applies, the court will order specific performance of promises to submit disputes to grievance and arbitration procedures, Textile Workers v. Lincoln Mills, 353 U.S. 448 (1956); the court will not examine the merits of a claim which on its face is governed by the Collective Bargaining Agreement, United Steelworkers of America v. American Mfg., 363 U.S. 564 (1960); the court will construe a dispute as arbitrable unless compelled to do otherwise by express contractual exclusions, United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960); and the court will not hear an employee's case if the subject matter of the case is arbitrable and the employee has failed to initiate the applicable grievance and arbitration procedure, Republic Steel Corp. v. Maddox, 379 U.S. 650 (1964).

Clearly, under the Labor Management Relations Act and federal case law, Mr. Manning would be bound by the Collective Bargaining Agreement (despite his nonmembership in the union), the clause in the Collective Bargaining Agreement barring private agreements would probably extinguish any agreement as to employment claimed by Mr. Manning, the grievance arbitration clause would provide the procedure for questioning his discharge, and Mr. Manning would not be permitted to bypass the grievance procedure by a lawsuit such as this.

However, the parties in this lawsuit are not subject to the Labor Management Relations Act. Section 2(2) of the LMRA, 29 U.S.C. § 152(2) excludes certain employers from coverage under the Act. Among the excluded employers are "the United States . . . or any state or political subdivision thereof." The Government of the Virgin Islands is within this exclusion. Virgin Islands Port Authority v. Siu

---

[3] Holding is based on purposes of the LMRA.

de Puerto Rico, 354 F.Supp. 312, 9 V.I. 325 (D.C.V.I. 1973), affirmed, 494 F.2d 455 (3d Cir. 1974).

■ Even though the LMRA is inapplicable, there is a temptation to adopt the federal labor policy by analogy. After all, that policy is the result of over forty years of litigation, numerous Congressional enactments and numerous Supreme Court decisions; a more considered body of law would be difficult to find. However, caution is in order; a policy applicable to the labor law of the private sector is not necessarily appropriate for the public sector. As stated by Kheel, Labor Law § 43.01:

> This former tendency by the legal community to overlook the importance of public sector labor relations was based primarily on the belief that an understanding of such law merely required a transportation of the "corresponding" law of the private sector. The fallacy of this assumption soon became evident, however, in the area of federal as well as state and local (municipal and county) labor relations.

> The public sector contains unique legal, economic, and political constraints that are not present in the private sector counterpart. Among the most significant differences are the absence of a profit motive; provision by the taxpayers, rather than by private employers, of funds to increase wages and benefits; selection of management through the political process; the establishment of wages, hours, and terms and conditions of employment by statutory directive; the illegal status of public employee strikes (except in a few states); and finally, the dependence of "management," i.e., the policy making body of the public employer, upon the political process.

> For those and other reasons, the argument has been made that for purposes of collective bargaining, private sector legal concepts developed pursuant to the National Labor Relations Act cannot be transferred without significant modifications to the public sector. Despite the similarity in their ultimate goals—to negotiate terms and conditions of employment for workers—private sector bargaining differs significantly from its public sector counterpart. The distinction was emphasized by one noted legal scholar, who observed that "in private employment collective bargaining is a process of private decision-making shaped primarily by market forces, while in public employment it is a process of governmental decision-making shaped ultimately by political forces."

464

Accordingly, in resolving the issues concerning a collective bargaining agreement with the Government of the Virgin Islands, the court will proceed with caution in considering analogies to the labor law applicable to the private sector.

■ Mr. Manning contends that he cannot be bound by a Collective Bargaining Agreement negotiated by a union, which union he never joined. His position is not supported by law. The Virgin Islands legislature approved the Collective Bargaining Agreement between the Department of Law, Government of the Virgin Islands and the United Industrial Workers of North America (hereinafter the "Union"). Section 1 of the Collective Bargaining Agreement designates the Union as the "sole and exclusive bargaining representative" for all Assistant Attorneys General. Implicit in the terms of the agreement is the recognition that the Union is empowered to bind all Assistant Attorneys General, whether union members or nonunion members. Under the LMRA the term "exclusive bargaining representative" embodies the power to bind all members of a bargaining unit. The Virgin Islands Legislature's approval of a Collective Bargaining Agreement containing terms which have acquired a specific meaning in a closely related field can be taken as an indication of the Legislature's approval of that specific meaning in the approved Collective Bargaining Agreement.

Furthermore, on June 2, 1980, the Virgin Islands' Legislature passed a Public Labor Relations Act over the Governor's veto (Act No. 4440; 24 V.I.C. § 361 et seq.). This is a comprehensive public labor relations law which parallels the LMRA in many respects. As to the Union's power to bind nonunion members of the bargaining unit, § 373(a) of the Act specifically provides that the exclusive bargaining representative has the right to "exclusively act for and negotiate agreements with the public employer covering all employees in the bargaining unit whether or not all employees are members of the labor organization." The specific language of § 373(a) makes it abundantly clear that the provisions of the Collective Bargaining Agreement apply to both union and nonunion members of the bargaining unit.[4]

■■ It is well recognized that in collective bargaining a majority of the members of the bargaining unit are generally accorded

[4] Although the Public Employees Relations Act makes provision for certification of a labor organization as the exclusive representative of the bargaining unit, the Court has been informed that the Board whose power it is to certify exclusive bargaining representatives has not yet been appointed by the Governor.

465

the right to have their union represent all of the members of the bargaining unit, and as stated by the Supreme Court in Emporium Capwell Co. v. Western Addition Community Organization, 420 U.S. 50, 62 (1974):

> Central to the policy of fostering collective bargaining, where the employees elect that course, is the principle of majority rule . . . . In establishing a regime of majority rule, Congress sought to secure to all members of the unit the benefits of their collective strength and bargaining power, in full awareness that the superior strength of some individuals or groups might be subordinated to the interest of the majority.

Accordingly, as an Assistant Attorney General, Mr. Manning is bound by the terms of the Collective Bargaining Agreement between the Government of the Virgin Islands and the United Industrial Workers of North America.

▇▇▇▇ Mr. Manning also challenges the termination of his employment by the Government of the Virgin Islands. Subject to contractual or statutory restraints, employment in the public sector is generally terminable at will, with or without cause. See Bishop v. Wood, 426 U.S. 341 (1975); McMillan v. City of Hazelhurst, 620 F.2d 484 (5th Cir. 1980) (en banc). Since Mr. Manning has invoked neither contractual nor statutory violations in opposition to his discharge, his only avenue of recourse is pursuant to the terms of the Collective Bargaining Agreement.[5] Section 29 of the Collective Bargaining Agreement makes it clear that an employee who is discharged may file a grievance as specifically provided in the Collective Bargaining Agreement. The Collective Bargaining Agreement establishes a procedure for resolving grievances and makes an arbitrator's award under its grievance procedure "final and binding" and "enforceable in any court of competent jurisdiction." As previously stated, Mr. Manning has never filed a grievance pursuant to the terms of the Collective Bargaining Agreement, and the Court is therefore not presented with the enforcement of an arbitration

---

[5] Mr. Manning has not sued on the basis of his rights under the collective bargaining agreement. The court might conclude this opinion at this point. After all, without a private contract and without resort to the collective bargaining agreement, Mr. Manning is merely an employee at will. The court declines to take this route for it is an example of form over substance. Mr. Manning has asked the court to enjoin his dismissal. Although he did not rely on the collective bargaining agreement, that agreement is before the court. The court must determine whether Mr. Manning is entitled to an injunction on the basis of his collective bargaining agreement rights.

award. Mr. Manning requested the Court to enjoin his discharge and thus bypass the grievance procedure set forth in the Collective Bargaining Agreement. This the Court will not do. As stated by the Supreme Court in Republic Steel v. Maddox, 379 U.S. 650, 652–53 (1964):

> As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress . . . . But unless the contract provides otherwise, there can be no doubt that the employee must afford the union the opportunity to act on his behalf . . . . Union interest in prosecuting employee grievances is clear. Such activity complements the union's status as exclusive bargaining representative by permitting it to participate actively in the continuing administration of the contract. In addition, conscientious handling of grievance claims will enhance the union's prestige with employees. Employer interests, for their part, are served by limiting the choice of remedies available to aggrieved employees. And it cannot be said, in the normal situation, that contract grievance procedures are inadequate to protect the interests of an aggrieved employee until the employee has attempted to implement the procedures and found them so.

> A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it. In addition to cutting across the interests already mentioned, it would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances.

Using this analysis from the federal law applicable to the private sector leads inevitably to the conclusion that even in the public sector grievances concerning termination of employment should be handled exclusively through the arbitration procedure provided in the Collective Bargaining Agreement.

 Mr. Manning also contends that his oral agreement with Mr. Swan, the former Attorney General, affords a basis for this Court to grant the injunctive relief he seeks. Aside from the considerations concerning the Collective Bargaining Agreement, which we have heretofore discussed, the oral agreement between Mr. Manning and Mr. Swan, interpreted in a light most favorable to Mr. Manning,

467

provides only that he had permission to continue the private practice of law for such time as was necessary to terminate outstanding matters with his private clients. The defendants claim that such an agreement is invalid on the ground that Title 3, section 117 of the Virgin Islands Code provides:

> [T]he Attorney General, Assistant Attorneys General, and Deputy Assistant Attorneys General shall not engage in the private practice of law, nor be associated directly or indirectly with any attorney in private practice.

Acting Attorney General Bouton stated in his affidavit that Mr. Manning was discharged because he had been engaged in the private practice of law in the state of New York while he was employed as an Assistant Attorney General. The Attorney General's affidavit also states that Mr. Manning was discharged because he had not rendered "satisfactory legal services to the Government of the Virgin Islands, either with regard to quality or quantity." The oral agreement does not provide for a definite term of employment nor does it limit in any way the right of the Virgin Islands Government to terminate Mr. Manning's employment at will. In the absence of a statutory or a contractual provision to the contrary, contracts of employment in the public sector are terminable at will. See Bishop, supra; McMillan, supra. Since the record, interpreted in a light most favorable to Mr. Manning, shows that he was an employee at will of the Virgin Islands Government, his employment was terminable at any time. The oral agreement does not thus serve as a basis for granting the injunctive relief which Mr. Manning seeks. Restatement of Torts § 762.

Furthermore, as we heretofore determined, Mr. Manning, as an Assistant Attorney General, is bound by the provisions of the Collective Bargaining Agreement. Section 34 of this Agreement provides:

> There shall be no individual contracts concerning terms and conditions of employment between the Employer and any Employee covered by this Agreement.

The case law makes it clear that any individual contract is invalid to the extent that it is inconsistent with the terms of a collective bargaining agreement. J. I. Case Co., supra. Moreover, as previously stated, Mr. Manning's notice of dismissal stated that he was discharged not only for engaging in the private practice of law, but also because his work was unsatisfactory. Any grievance which Mr.

Manning may have must therefore be submitted for determination pursuant to the procedures specifically provided in the Collective Bargaining Agreement. Mr. Manning's claims that his employment should not have been terminated by the Virgin Islands Government does not state a cause of action entitling him to relief from this Court. J. I. Case Co., supra.

Accordingly, in view of the fact that matters outside the pleadings were considered by the Court, and since there is no genuine issue as to any material fact, for the reasons herein set forth, the Court entered its Order of March 20, 1981, granting summary judgment in favor of the defendants, Mr. Bouton and the Government of the Virgin Islands, and against the plaintiff, Mr. Manning.